Points decided.

# GEORGE DOUGHERTY *v.* CHARLES M. HITCHCOCK.

STREET ASSESSMENT IN SAN FRANCISCO — MODE OF ITS AUTHENTICATION. — An assessment made by the Superintendent of Streets of San Francisco, to cover the sum due for the improvement of a street, is an official act, and must be attested by his official signature.

IDEM, AS EVIDENCE.—An assessment not thus officially attested, though attached to the diagram and the Superintendent's warrant, which were in due form and properly attested, does not constitute a valid assessment, and is not admissible in evidence, either by itself or in connection with the warrant and diagram.

CONTRACTS AND ASSESSMENTS FOR STREET IMPROVEMENTS. — Under the statute regulating street improvements in San Francisco the Board of Supervisors adopted a resolution of intention to grade Clay street from Taylor to Jones and from Jones to Leavenworth streets, and the crossing of Clay and Jones streets, and subsequently ordered said work to be done, and the clerk advertised for proposals for its performance, notifying bidders to put in separate bids for each block and said crossing. The Board awarded a contract for the whole work. The only contract entered into by the Superintendent of Streets, etc., with the successful bidder, was for the grading of one block only—that from Jones and Leavenworth streets. *Held*, first, that the resolution of intention and its publication constituted the sole authority of the Board to proceed, in the statute mode, to order said work to be done, and that thereby no authority was conferred to act upon any other or different work ; second, that the work designated in the resolution of intention constituted one distinct and entire subject matter ; third, that the resolution of award constituted the sole authority to the Super ntendent, who acted ministerially only in making a contract under it, and that the contract, by reason of variance between its terms and the resolution of award, was unauthorized and void; and fourth, that a contract duly authorized under said Act, and executed according to its requirements, is indispensable to the validity of any assessment upon property to pay for street improvements.

IDEM—APPEAL IN, TO THE BOARD.—In such case the defect in the contract is not cured by the failure of the lot owners to appeal for its correction to the Board of Supervisors, because, had an appeal been taken the defect could not have been remedied by the Board.

AUTHORITY OF BOARD OF SUPERVISORS TO MAKE STREET IMPROVEMENTS. — Under the provisions of sections three and eight of the Act of 1862, (Stats. 1862, p. 391,) the jurisdiction is vested in the Board of Supervisors to determine whether the whole or a portion, and if a portion what portion of a street improvement shall be done as a single improvement. It is necessary to a proper execution of this important power, and to protect the interests of property owners, that such determination should be distinctly and clearly expressed, so as to enable those interested to act intelligently. When so expressed the subsequent proceedings of the Board must be in strict pursuance thereof as their sole authority, and if not so pursued, such subsequent proceedings will be void—*Per* Mr. Chief Justice SAWYER.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

This was an action to recover a street assessment of the defendant who was a lot owner on Clay and Leavenworth streets, in the City and County of San Francisco. The plaintiff sued as the assignee of one M. W. Griffin, who was the contractor by whom the street improvements in question were made. The complaint was in the usual form, and the answer of the defendant was a general denial. At the trial, which was before the Court without a jury, the plaintiff, to sustain the issue on his part, among other matters offered in evidence the following documents which were produced from the office of the Superintendent of Public Streets, Highways, and Squares, as the Superintendent's assessment and warrant, and the return thereon, or affidavit of demand and non-payment, and were attached to each other, to wit:

## "ASSESSMENT.

"Assessment for grading Clay street, from Jones to Leavenworth street, as per contract made with M. W. Griffin, on the 3d day of July, A. D. 1863:

| | | |
|---|---|---|
| 39,921 cubic yards of grading, at 68c...... ....... | $27,146 | 28 |
| Printing, $1 84; Engineering, $48.................. | 49 | 84 |
| | $27,196 | 12 " |

The assessment contained, also, a detailed statement of the frontage on each street, the rate of assessment per front foot on each, the designation of lots by number, and names of owners known and unknown.

## "WARRANT.

"By virtue hereof, I, George Cofran, Superintendent of Public Streets and Highways, of the City and County of San Francisco, and State of California, by virtue of the authority vested in me as said Superintendent, do authorize and empower M. W. Griffin, his agents or assigns, to demand and receive the several assessments upon the assess-

ment and diagram hereto attached, and this shall be his warrant for the same.

"San Francisco, March 2d, A. D. 1867.

"GEO COFRAN,

"Superintendent of Public Streets, Highways, and Squares. "Countersigned by

"H. M. HALE, Auditor."

"RETURN, ETC.

"STATE OF CALIFORNIA, ⎫ ss.
City and County of San Francisco. ⎭

"George Dougherty, being duly sworn, deposes and says, that he is the assignee of M. W. Griffin, the contractor named in the annexed assessment list and warrant; that since the date of said warrant, and by virtue thereof, and as such assignee, he went upon each of the lots exhibited on the diagram attached to the said assessment list and warrant, and numbered thereon, respectively, one, two, three, four, five, six, seven, nine, ten, twelve, thirteen, fourteen, fifteen, sixteen, and seventeen, and between the hours of nine o'clock A. M. and four o'clock P. M. in an audible tone of voice publicly demanded on each lot payment of the sum or sums assessed thereon in the said assessment list, but that notwithstanding such demands so made, the several sums assessed in the said assessment list against the said lots, exhibited and numbered as aforesaid, remain due and unpaid.

"GEO. DOUGHERTY.

"Subscribed and sworn to before me this 11th day of March, A. D. 1867.

[SEAL.]                    "R. P. LEWIS,
                                "Notary Public."

The diagram, which was also offered in connection with said other documents, is omitted, no point being made on it except as to its admissibility in connection with the other evidence offered.

The defendant objected to the admission of said documents on the following grounds among others: First, that the assessment was not signed, or in any manner authenticated as an official act, and did not appear to have been made by the Superintendent of Public Streets and Highways, or by any person or officer having authority to make the same; and, second, that the warrant was not signed or countersigned by any person or officer having authority to sign or countersign the same.

The Court overruled the objections, and the defendant excepted, and said papers were thereupon given in evidence. The plaintiff also gave in evidence the records from the office of the Superintendent of Public Streets, Highways, and Squares, showing that said papers had been recorded in that office; and the defendant admitted as true the allegations of the complaint as to his ownership of the lot in question, and the assignment by M. W. Griffin to the plaintiff.

The plaintiff then rested; and the defendant, to sustain the issues on his part, gave in evidence the following statement of facts agreed on by the parties:

On the 18th day of May, 1863, the Board of Supervisors passed the following resolution, being the only resolution ever passed by said Board declaring its intention to order the grading therein mentioned, or any portion thereof:

"RESOLUTION OF INTENTION, No. 2,594.

"*Resolved*, That it is the intention of this Board to order the following street work, viz: That Clay street, from Taylor to Jones, and from Jones to Leavenworth streets, and the crossing of Clay and Jones streets, be graded; and that persons objecting to the same be required to file their objections in writing, in the office of the Clerk of the Board of Supervisors, within ten days, stating how much frontage on said streets is represented, and on what street located.

"In Board of Supervisors, San Francisco, May 18th, 1863.
                                "JAS. W. BINGHAM, Clerk."

This resolution was duly published.  On the first day of June, 1863, said Board passed the following resolution, being the only resolution or order ever passed or made by said Board ordering the work therein mentioned, or any part thereof, or relating to proposals for the same:

"RESOLUTION ORDERING STEET WORK, No. 2,631.

"*Resolved*, That the following street work be done in accordance with specifications to be furnished by the Superintendent of Public Streets and Highways, and under his supervision, viz:  That Clay street, from Taylor to Jones, and from Jones to Leavenworth streets, and the crossing of Clay and Jones streets, be graded, and that the Clerk is hereby authorized to advertise for proposals to do the above work.

"In Board of Supervisors, San Francisco, June 1st, 1863.

"JAS. W. BINGHAM, Clerk."

The Clerk of the Board posted and published the following advertisement, inviting proposals for the work therein mentioned:

"CLERK'S OFFICE, BOARD OF SUPERVISORS, }
San Francisco, June 8th, 1863. }

"In accordance with Order No. 2,631 of the Board of Supervisors, sealed proposals will be received for five days at the office of the Clerk of the Board for the following street work, to be done under the supervision of the Superintendent of Public Streets and Highways, and in accordance with the following specifications, viz:  For grading Clay street from Taylor to Jones, and from Jones to Leavenworth streets; also, for grading the crossing of Clay and Jones streets.  The above named portion of Clay street, and the crossing, are to be graded to the official height and line, and the roadway, when completed, is to have a proper crown to the centre.  The work to be done in a good and workman-

like manner, under the direction and to the satisfaction of the Superintendent of Public Streets and Highways.

"GEORGE T. BOHEN,

"Superintendent of Public Streets and Highways."

"NOTICE.—Bidders will estimate by the cubic yard, and will put in separate bids for each block, and the crossing.

"In order to preserve uniformity, and to facilitate the award, the Board have resolved to receive no bids unless made upon blank forms prepared by the committee, and signed by two or more sureties, in the sum of two hundred dollars, for the performance of the work.

"Blanks furnished by the Clerk.

"The Board reserves the right to reject any or all bids, as the public good may require.

"No bids will be received after June 13th, 1863, at four o'clock, P. M.

"JAS. W. BINGHAM, Clerk."

On the 22d day of June, 1863, said Board passed the following resolution constituting the award referred to in the complaint:

"RESOLUTION OF AWARD, No. 2,681.

"*Resolved*, That the contract for grading Clay street, from Taylor to Jones, and from Jones to Leavenworth streets, also, for grading the crossing of Clay and Jones streets, be and the same is hereby awarded to M. W. Griffin, (provided his sureties are satisfactory to the Superintendent of Public Streets and Highways,) he being the lowest responsible bidder therefor at the following prices, viz:

"Clay street—Taylor to Jones streets—Grading, per cubic yard, thirty-five cents.

"Jones to Leavenworth streets—Grading, per cubic yard, sixty-eight cents.

"Crossing Clay and Jones streets—Grading, per cubic yard, sixty cents.

"In Board of Supervisors, San Francisco, June 22d, 1863.

"JAS. W. BINGHAM, Clerk."

No other award was ever made by said Board of any contract for the work mentioned in said resolution, or any part. thereof. The Superintendent entered into a contract with said Griffin for the grading of Clay street from Jones to Leavenworth streets alone, under which contract the plaintiff, as the assignee of Griffin, claimed in this action.

The foregoing evidence, on the part of the defendant, was received subject to the objection and exception of the plaintiff as to the competency and materiality of the evidence therein contained, the objection being that it related to matters which could not be taken advantage of except on appeal to the Board of Supervisors. The plaintiff had judgment in the Court below. The defendant moved for a new trial, which was denied, and thereupon appealed from both the judgment and the order denying a new trial.

The other facts are stated in the opinion of the Court.

*Cope & Daingerfield,* for Appellant.

The Court erred in admitting the assessment, diagram, warrant, and return or affidavit of demand and non-payment. The assessment is not authenticated as an official act. It is not signed, and does not appear to have been made by any person having authority to make it. It has none of the requisites of an official document. (Blackw. on Tax Titles, 345.)

But it is claimed that the assessment should be considered in connection with the warrant, and that its official character is shown by the latter. The warrant nowhere states by whom the assessment was made, and if any inference on the subject can be drawn from it, it amounts merely to a presumption that the officer who signed it did his duty, and would not have signed it if the assessment had been made by an improper person. This presumption, however reasonable in itself, is wholly unavailing. The plaintiff is

asserting a right based on a special statutory proceeding, and in order to recover he must show that the statute has been complied with. There are no presumptions in his favor. Whatever is necessary to give effect to the proceeding, must affirmatively appear, and no material omission can be supplied by intendment or presumption. The assessment could only be made by the officer designated in the statute, and it is of the essence of the matter that he should appear to have made it. The rule in such cases is too familiar to require discussion. (Blackw. on Tax Titles, 71, 72, and cases cited; *Sharpe* v. *Spier*, 4 Hill, 86; *Varick* v. *Fallman*, 2 Barb. 113; *Kean* v. *Cannovan*, 21 Cal. 291.) Another answer is that the warrant itself has no effect unless attached to a valid assessment. (Stats. 1862, p. 397.)

The proceedings prior to the assessment were not in conformity with the statute, and constituted no foundation for the assessment. The award as well as the preceding resolutions of the Board included the entire grading from Taylor street to Leavenworth, and the only contract authorized was a contract for the whole work. The contract executed was merely for a portion of it, commencing at Jones street, between Taylor and Leavenworth, and extending to the latter. No such contract was authorized by the award. The contract was executed by the Superintendent of Public Streets and Highways, and its execution was purely a ministerial act. The Superintendent was the mere creature of the statute, and had no power except to follow the award. In departing from it, he clearly exceeded his authority, and the case stands precisely as if no contract had been executed.

The proceedings presented by the statute are summary, and the rule is universal that a statute authorizing summary proceedings must be strictly pursued. It must be followed step by step, and complied with throughout. A departure at any point is fatal to the jurisdiction; and the same principle applies in all administrative proceedings. (Sedg. on Stat. 347–357; *Gregory* v. *McPherson*, 13 Cal. 562; *Townsend*

v. *Gordon,* 19 Cal. 188; *Taylor* v. *Donner,* 31 Cal. 480, and cases cited; *Smith* v. *Davis,* 30 Cal. 536.)

But it will be said that all these objections relate to matters which cannot be considered by the Court, and could only be taken advantage of by appeal to the Board. But these provisions cannot be regarded as furnishing an exclusive remedy in respect to proceedings invalid for want of jurisdiction. Such a construction would place the Board on a higher footing than any other tribunal in the State, and enable it to act independent of the law from which it derives its power. Its proceedings could never be collaterally assailed, and whatever it chose to do the Courts would be compelled to accept as valid and binding. The objection we make is, not that the Board proceeded irregularly, but that it acted without jurisdiction. .

The statute provides that an appeal may be taken from the assessment, and such objections made as relate to any of the acts or determinations of the Superintendent, or to the correctness or legality of the assessment. In deciding the appeal, the Board is authorized to correct, alter, or modify the assessment, and require the Superintendent either to correct it, or make a new one in conformity with the decision; and it is provided that the decision shall be final and conclusive as to all errors and irregularities which the Board could have remedied and avoided. (Stats. 1863, p. 530.) In this case the errors complained of were clearly irremediable by the Board on appeal.

*R. P. & Jabish Clement,* for Respondent.

The assessment, diagram, and warrant were attached together. The assessment referred to the diagram; the diagram was without fault; and the warrant referred to the assessment and diagram, and was duly signed and countersigned. The three papers constituted together one document, and the signature of one was the signature of all. They conform exactly to the statute, and sections nine and

ten (Acts 1862, p. 391) are a perfect answer to the objection that each was not signed. Only one, the warrant, is by the Act required to be signed, (Sec. 10;) and the specification of that one is an exclusion of the others from the requirement.

The irregularity or defect complained of, if it is in fact such, is clearly one which might have been remedied and avoided on appeal to the Board. (*Smith* v. *Cofran*, 34 Cal. 310; *Beaudry* v. *Valdez*, 32 Cal. 278.)

All the objections of appellant to the proceedings prior to the assessment are within the exclusive jurisdiction of the Board of Supervisors; and the right to introduce the evidence on which the argument of counsel is based has been expressly denied by this Court. (*Nolan* v. *Reese*, 32 Cal. 484, and cases there cited.)

The property owners certainly had, under the statute, a remedy by appeal upon all the matters to which objection is taken. (Stats. 1862, Secs. 4, 9, 12, p. 391; Stats. 1863, p. 525.) For if the proceedings were not literally and technically correct, the errors or irregularities were such as the Board might easily and would readily have corrected. But the proceedings were absolutely without fault. They were, in regard to the matters objected to, distinctly within the reasoning and the decision of this Court in *Emery* v. *Bradford*, 28 Cal. 375; and *Beaudry* v. *Valdez*, 32 Cal. 275.

By the Court, RHODES, J.:

It is provided by section nine of the Act of 1862, relative to the improvement of streets in San Francisco, that after the contractor has fulfilled his contract, etc., the Superintendent shall make an assessment to cover the sum due for the work performed and incidental expenses. This is an official act on the part of the Superintendent, and its character and authenticity can be attested in only one manner, and that is the official signature of the Superintendent. Its official character must be made to appear on its face. In *Him-*

66

*melman* v. *Danos*, *ante*, 441, it is held that the copies of the assessment, warrant, and diagram found in the Superintendent's book could not be considered as a record until signed by the Superintendent, because the making of the record was an official act, and its official character must be made to appear on its face. The document cannot be regarded as an assessment, and, standing by itself, is was clearly inadmissible.

But it is contended that it was helped out by the warrant, which was signed by the Superintendent, and countersigned by the Auditor, and was attached to the assessment. This position might be maintained if the two papers constituted only one official document; but they are distinct, and each must be in truth what it purports to be before they can be attached together for the purposes specified in the Act. The position contended for would make a summons without the signature of the clerk valid, if it was attached to the other papers constituting the judgment roll.

It is further contended, that as the statute, in providing for the assessment, warrant, and diagram, expressly requires only one—the warrant—to be signed by the Superintendent, it was not intended that either of the others should be signed, and the rule, that the mention of the one is the exclusion of the others, is relied upon to sustain the position. There would be great merit in the argument if either of these documents could be regarded as official, in the absence of an official signature. Its application in respect to the signature of the Auditor is very apparent. But the statutory requirement that the warrant should be signed by the Superintendent was an unnecessary repetition, for the issuing of the warrant as necessarily imports and includes its signature as the averment that a summons was issued by the clerk imports that it received his official signature. This view is illustrated by the positions taken in *Himmelman* v. *Danos* in respect to the provisions of the next section of the statute. It is there provided that the Superintendent shall record the assessment, diagram, warrant, and the return, and the contract

also, if it has not already been recorded, "and shall sign the record;" and upon the question whether the copies of the first three constituted a record capable of creating the statutory lien, it was held that they did not amount to a record, because the signature of the Superintendent was wanting from the copies.

The street work mentioned in the resolution of intention is the grading of Clay street from Taylor to Jones, and from Jones to Leavenworth streets, and the crossing of Clay and Jones streets. The Board ordered that work to be done; the advertisement for proposals was for the same work—the bidders being notified to put in separate bids for each block and the crossing—and by the resolution of award, the contract for the whole work was awarded to the lowest bidder at specified prices for each block and the street crossing. The contract was entered into between the Superintendent and the contractor for the grading of one block only—that from Jones to Leavenworth streets. It is very apparent from this statement that the contract was wholly unauthorized by the resolution of the Board. The resolution of intention and its publication confer upon the Board jurisdiction to proceed in the prescribed mode to order the proposed work to be done, and in the exercise of the jurisdiction thus acquired the Board has no power to act upon any other or different work. The proposed work is a distinct and entire subject matter. There is a manifest propriety in confining the Board to the specific improvement mentioned in their resolution. The owners of the adjoining lots may be quite willing that the proposed improvement should be made, but they may have well grounded objections to a work either of a greater or less extent. Suppose Clay street had been graded from Kearny to Taylor street. The lot owners might desire that the grading should be continued to Leavenworth street, but if they were sane they would not consent that the block between Taylor and Jones streets should be passed by, and that a vast chasm should be dug in the street by the excavation of about forty thousand cubic yards of earth from

the block between Jones and Leavenworth streets. The resolution of award is the letter of authority to the Superintendent, and he has no more power to contract for the performance of only a part of the work therein specified than of additional work. The execution of the contract by him was purely a ministerial act, and a contract that does not accord with the award is as destitute of binding force as one executed in the absence of an award. A contract authorized and executed in the mode prescribed by the Act is indispensable to the validity of the assessment. This defect is not cured by the failure of the lot holders to appeal to the Board, because had an appeal been taken, the defect could not have been remedied by the Board.

Judgment reversed.

SPRAGUE, J., concurring specially:

I concur in the judgment upon the last point discussed.

SAWYER, C. J., concurring specially:

The resolution of intention, the resolution ordering the work, and resolution awarding the contract, do not express the intention of the Board of Supervisors as clearly as they should. The question arising upon the resolutions is, whether the Board designed to make the improvements and let the work out in three separate contracts, or as one—that is to say, whether the work from Taylor to Jones streets was to be let as one job, the work from Jones to Leavenworth as another, and the crossing of Clay and Jones as another— or whether the whole was to be done as a single improvement and let in one contract, as one job, and, as a consequence, the expense be distributed equally over the whole. The difference between the two modes of letting may be highly important to property holders, and affect their interests in various ways. It may affect the right of the Board

to make the improvement at all, or increase or diminish the amount of the assessment on the individual property holders, or affect the right of a majority of the holders of property fronting on the contemplated improvement to take the contract themselves at the lowest bid.    For instance, the owners of more than half the frontage on two, three, or more blocks, where the amount and cost of the work varies on each block, might object to the improvements as a whole—as one improvement—the expense to be distributed equally through the whole district to be improved, and, by objecting, prevent the work, while there might be no such objection if the improvement was to be made on each block as a separate work and distinct district, and *vice versa*.    So, a part of the improvement might be made, while the whole might be prevented by objections.

So upon the large single contract a majority of the property holders may not desire to unite and take the contract, while, if let in separate contracts and performed as separate works, a majority of the owners on some blocks might desire to take the contract themselves.    Unless the intention of the Board is clearly expressed on these points, property holders will be at a loss how to act.    They will not be able to determine whether their interests will be best subserved by objecting to or favoring the work.    The points made by appellant's counsel make it necessary to construe the several resolutions referred to, under which the work now under consideration was authorized, if authorized at all.    After giving the language of the Board the best consideration I am able, I am compelled to say, that I think the intention manifested in all the resolutions, from the declaration of intention to the awarding of the contract, is to make the improvement as one improvement, and let the whole as a single contract.    Resolution No. 2,681, awarding the contract, speaks of but one contract, and awards that to Griffin. The price for different portions of the work is different; but this might well be, and it does not affect the question. It was necessary that there should be a separate estimate for

the crossing, because it is to be assessed in part upon different property. The prior resolutions also seem to contemplate the work as one improvement. The work was, however, let in separate contracts, and the assessments finally separately made, the cost of improving each block on Clay street being assessed upon that block alone, and not the whole extended over the whole as one district. If, then, as I construe the resolution, the improvement was to be made as one improvement, and let as one contract, the authority given was not pursued.

The contract sued on was, therefore, unauthorized. The defect is not one that could be cured by appeal, for when the time for appeal came the work was done and the mischief past remedy. (*Emery* v. *Bradford*, 29 Cal. 86.) The contract made, did not pursue the authority, and was, therefore, wholly unauthorized. By the course pursued, the property holders were deprived of an opportunity to avail themselves of important rights, which the statute secures to them as a condition precedent to the levy of a valid assessment upon their property.

Under section three of the Act of 1862, (Stats. of 1862, p. 391,) the Board of Supervisors are "empowered to order the whole, or any portion" of a street graded or planked; and by section eight, "the expense of any work authorized by section three of the Act shall be assessed upon the lots and lands fronting thereon, except as hereinafter specially provided." The jurisdiction to determine whether the whole or a portion, and if a portion, what portion, shall be done as a single improvement, is vested in the Board of Supervisors. The design is that all improvements of the kind should have some reference to the requirements of the locality, and that the expense should be distributed with some reference to the benefits conferred. In some instances, it would, doubtless, be just, that a single block should be improved, and the expense paid by that block. In others, on a single block the work might be very heavy and expensive, while, for several blocks beyond, it might be extremely light,

yet the improvement on the single block, where the work is heavy and expensive, might be more advantageous to the other blocks beyond, where the work is light, than to the block itself. In such case, justice would require that the whole work should be made at once, as one improvement, extending over several blocks, and the expense distributed over the whole district or portion of the street thus improved and benefited. And it is with this view that the authority to determine the extent of the improvement is conferred upon the local Board, the members of which are supposed to be able to comprehend the wants of each locality, and merits of each particular case. It is necessary to a proper execution of these important powers, and to protect the interests of property owners, that the determinations of the Board with respect to these matters should be distinctly and clearly expressed, to enable those interested to act intelligently, and when so expressed, that the proceedings under them should be strictly in pursuance of the authority given to the Board. Unless the authority is pursued the proceedings will be void. The expenses of street crossings are assessed upon different property in part from that for the improvement of the other portions of the street, and for this reason the work must be kept separate, even if embraced in the same contract; and for this reason, also, it would, perhaps, be better to let it as a separate work. But, however this may be, when the Board determines to make an improvement as a single work, the expense to be distributed over the whole, and awards the contract upon that hypothesis, if the contracts are made, the work done in separate contracts, and the assessment made accordingly, the authority is not pursued, and the assessment for the expense is, consequently, invalid.

On the grounds indicated I concur in the judgment, but I am compelled to dissent as to the other points discussed in the opinion of my associates.