[No. 4,388.]

## PENNINGTON *v.* BAEHR.

SIGNING BY PRINTED FAC SIMILE.—Coupons of bonds may be signed by a printed *fac simile* of the maker's autograph, adopted by the maker for that purpose, though not expressly authorized by statute.

APPLICATION for a writ of mandate to require the respondent, as State Treasurer, to pay the interest on certain bonds, as evidenced by coupons attached thereto. In pursuance of law, a levee district was organized in Sutter county, in the year 1871, and designated Levee District No. 5. Thereafter, works of reclamation were commenced and carried on in the district and large expenditures of money were thereby made, amounting to five hundred thousand dollars, for which warrants were duly issued. Under the Act of March 30, 1872, "To provide for funding the indebtedness of the reclamation and levee districts of the State" (Stat. 1871–2, p. 835), the warrants so issued were funded in bonds of the district of five hundred dollars each, bearing interest at the rate of eight per cent. per annum, payable on the first day of January and July of each year. The bonds were prop-

erly numbered, dated and sealed, and were signed by the Reclamation Fund Commissioners, as provided in the said Act, and had coupons for the interest attached to each bond. The President of the Fund Commissioners caused a *fac simile* of his autograph to be printed on the coupons, and adopted the printing as his signature, instead of writing his name with his own hand. The bonds so issued were received by the creditors in satisfaction of the warrants held by them. By the Act of March 25, 1872, amendatory of the Act of 1872, *supra* (Stats. 1873–4, p. 585), it was provided that the assessments collected for the payment of the principal and interest of the bonds should be paid to the State Treasurer, in the same manner as other taxes, to constitute an interest and sinking fund, from which the State Treasurer was authorized and directed to pay the interest and principal of the bonds as they become due.

The petitioner, being the holder of a bond on which the interest for six months became due July 1, 1874, presented to the respondent the coupon representing the interest, and requested payment thereof, there being sufficient money in the fund for that purpose. The respondent refused to make the payment, on the ground that the name of the President of the Fund Commissioners had been printed upon the coupon, and not written with his own hand. Thereupon the petitioner made this application.

*I. S. Belcher,* for the Petitioner, argued that the *fac simile*, having been printed by direction of the President of the Fund Commissioners, and adopted by him as his signature, was a legal signing of the coupon. He cited *Davis* v. *Shield,* 26 Wend. 352; *James* v. *Patton,* 6 N. Y. (2 Seld.) 13; *Miller* v. *Pilliton,* 4 Edw. 102; Benjamin on Sales, 191–2; 3 Phillips on Ev. (4 Am. ed.), 371; Brown on Stat. of Frauds, sec. 356. He also referred to the custom of signing the coupons of railroad bonds and other bonds, bank notes and the United States legal tender notes by printed *fac simile.*

*Attorney-General Love,* for Respondent, contended that

to constitute a legal signature, there must be an actual writing of the name of the signer; and he referred to the definitions of the words "signature" and "to sign" in the dictionaries of Webster, Worcester, Bouvier, Wharton and Burrill. A printed *fac simile*, he said, could be more easily forged than an autograph; and such a signature would be no more protection than no signing at all. He contended that a *fac simile* could not be adopted as a signature without express authority of law, and that in the instances referred to by counsel for petitioner, the legal tender notes and bank notes, the statute had authorized the use of the *fac simile*.

The COURT ordered the mandamus to issue as prayed for.