[Civ. No. 1177.    Third Appellate District.—October 28, 1913.]

PETALUMA ROCK COMPANY (a Corporation), Appellant, v. A. M. SMITH et al., Respondents.

MUNICIPAL CORPORATION—STREET ASSESSMENTS—OMISSION OF SIGNATURE OF SUPERINTENDENT OF STREETS.—The fact that the superintendent of streets does not sign an assessment for street improvements does not deprive the contractor of his right to a lien, if the assessment recites that the superintendent made it, and the warrant is signed by the superintendent and refers to the assessment and diagram as made by him, and the three documents are attached together and duly recorded.

APPEAL from a judgment of nonsuit of the Superior Court of Sonoma County.    Emmet Seawell, Judge.

The facts are stated in the opinion of the court.

Lippitt & Lippitt, for Appellant.

Haskell & Cromwell, for Respondents.

CHIPMAN, P. J.—This is an action to enforce several separate liens for street work done, under the so-called Vrooman Act, in the city of Petaluma.    The sections of the act brought under examination are found in the amendatory act of 1889.    (Stats. 1889, p. 157.)

The sole question arose upon the testimony of E. S. Shaver, the superintendent of streets of said city.    The record is as follows:

" 'I am superintendent of streets of the city of Petaluma, and was such on the 7th day of November, 1907.' "

"A document is shown to witness and he is asked if that is his signature appended thereto, and he answers that it is.

"Plaintiff thereupon offered in evidence a warrant, assessment, certificate, diagram, affidavit of demand and nonpayment, showing that said warrant, assessment, certificate and diagram were recorded on the 7th day of November, 1907, by E. S. Shaver, superintendent of streets of the city of Petaluma, in the matter of the assessment for the improvement of Walnut Street from the northerly line of Prospect Street to the southerly line of Galland Street, street assessment No. 83.

"Defendants objected to the introduction of this paper, for the reason that the assessment was not signed by the superintendent of streets and there was nothing to show that the same was an authentic or official document. The assessment is an official action and it must be authenticated by his signature as superintendent of ·streets in order to authorize the assessment."

"The witness thereupon testified: 'This paper is the original assessment, return, diagram and warrant in this case, and was recorded in my office on the day which it is marked recorded and while I was superintendent of streets of the city of Petaluma. It is the assessment, warrant and diagram under which the improvement of Walnut Street, involved in this case, was done.' "

The assessment is in due form and reads:

### "ASSESSMENT.

"Pursuant to statute, I, E. S. Shaver, as superintendent of streets of the city of Petaluma, county of Sonoma, state of California, do hereby assess and apportion, as shown hereinafter and in the diagram attached hereto, upon certain lots," etc. Then follows:

### "Diagram.

"Exhibiting Walnut Street . . . on which work has been done under my official contract as superintendent of streets," etc. Next follows:

### "Warrant.

"By virtue hereof, I, E. S. Shaver, of the city of Petaluma, county of Sonoma, and state of California, by virtue of the authority vested in me as said superintendent of streets, do authorize," etc.

"At the city of Petaluma this 8th day of October, A. D. 1907.

"E. S. Shaver,
"Superintendent of Streets of the City of Petaluma.
"Countersigned by

"H. P. Brainerd,
"President of the Board of Trustees of the City of Petaluma.
"Recorded this 8th day of October, A. D. 1907.

"E. S. Shaver,
"Superintendent of Streets."

These documents were identified by witness Shaver as
"No. 83,

"City of Petaluma.

"Recorded the 8th day of October, 1907, Vol. 1, page 472
to 477.

"Delivered this 8th day of Oct., 1907.

"Returned this 7th day of November, 1907."

There was some evidence upon other matters which we
understand are not now in question. Upon objection of coun-
sel for defendants to the introduction of these papers in evi-
dence, the court reserved its ruling and, upon motion for a
nonsuit, sustained the objection and granted the motion "on
the ground that the assessment was defective and omitted the
signature of the street superintendent and was, therefore,
irregular, illegal as an assessment and rendered the whole
proceeding void." Judgment passed for defendants from
which plaintiff appeals. The contractor's return was duly
recorded and the record signed by the superintendent on
November 7, 1907.

Section 8 of the statute of 1889 provides: "After the con-
tractor of any street work has fulfilled his contract to the
satisfaction of the street superintendent . . . the street super-
intendent shall make an assessment to cover the sum due for
the work performed and specified in said contract" (then fol-
low directions as to what facts shall appear in the assessment),
"and shall attach thereto a diagram exhibiting each street
crossing," etc. Section 9 provides: "To said assessment shall
be attached a warrant, which shall be signed by the superin-
tendent of streets and countersigned by the mayor of said
city. The said warrant shall be substantially in the follow-
ing form:

"Form of Warrant.

"By virtue hereof, I (name of superintendent of, etc.) by
virtue of the authority vested in me as said superintendent of
streets do authorize and empower (name of contractor) (his
or their) agents or assigns to demand and receive the several
assessments upon the assessment and diagram hereto attached,
and this shall be (his or their) warrant for the same.

"Date—Name of superintendent of streets.

"Countersigned by (name of mayor).

"Said warrant, assessment and diagram, together with the certificate of the city engineer, shall be recorded in the office of said superintendent of streets. When so recorded the several amounts assessed shall be a lien upon the lands, lots or portions of lots assessed, respectively, for the period of two years from the date of said recording, unless sooner discharged; and from and after the date of said recording, of any warrant, assessment, diagram, and certificate, all persons mentioned in section eleven of this act shall be deemed to have notice of the contents of the record thereof." After these documents "are recorded the same shall be delivered to the contractor or his agent or assigns on demand . . . and by virtue of said warrant said contractor . . . shall be authorized to demand and receive the amount of the several assessments," etc.

Section 12 provides that when suit is brought to enforce the lien, "the said warrant, assessment, certificate, and diagram, with the affidavit of demand and nonpayment shall be *prima facie* evidence of the regularity of and correctness of the assessment and of the prior proceedings and acts of the superintendent of streets and city council upon which said warrant, assessment, and diagram are based, and like evidence of the right of the plaintiff to recover in the action."

Respondents rely upon the case of *Dougherty* v. *Hitchcock*, 35 Cal. 512, which was decided in 1868 under the act of 1862 (Stats. 1862, p. 391); and upon *Himmelman* v. *Danos*, 35 Cal. 441.

In the particulars here involved the statutes of 1862 (Stats. 1862, p. 391) and of 1863 (Stats. 1863, p. 525) do not differ materially from the act of 1889. The provisions relating to the assessment, the diagram, and warrant; the recording of the same; the provision that the lien attaches upon the recordation; that thereafter they are made *prima facie* evidence of the regularity and correctness of the assessment and acts of the superintendent and of the right of the plaintiff to recover in the action, are the same in all these acts. The earlier statutes did not nor does the act of 1889 in terms require the superintendent to sign the several papers constituting the record except the warrant. In *Himmelman* v. *Danos* these documents were recorded in a book kept by the superintendent for the purpose indicated and under the copy appeared the words "Recorded this 9th day of October, A. D. 1866." This

certificate was not signed by the superintendent nor by any one for him. In the present case the superintendent did sign the certificate of the record. It was held that the copy of the record failing to show that it was authenticated could not be considered as a record. Its insufficiency was also pointed out in other respects. "But," said the court, "independent of the foregoing considerations, we think the copies found in the book cannot be received as a 'record,' for the reason that they were not signed by the proper officer. It is true that it is not, in terms, provided that the record of the assessment, diagram and warrant, which, according to the plan of the statute, preceded by several days the record of the return or affidavit of demand and nonpayment, shall be separately signed by the superintendent, but it is, in terms, provided that the record, when completed by the addition of the contract and the return, shall be signed by that officer. But if there was no express provision to that effect, the official signature of the superintendent would be none the less material." What follows seems to be an argument to show that the record when made up should be authenticated, that is, signed by the superintendent; that though not essential to the validity of the record, these papers "should be recorded in the order of their coming. Like the summons, complaint, and answer in a judgment-roll, they constitute different parts of the same record; and as in the case of the former, each separate part should bear the date of its making, and the whole, when completed, should bear the official signature of the proper officer. The question, whether the record of the assessment should be separately signed, is reserved." We do not discover in this case that the precise question was decided. The court did not have occasion to comment on the lack of the superintendent's signature to the assessment. The point emphasized was that the record was not authenticated. But in *Dougherty* v. *Hitchcock*, 35 Cal. 512, the question was distinctly passed upon. It was there claimed by respondent, as is here claimed by appellant, that the assessment, diagram, and warrant were attached together; that the assessment referred to the diagram which latter was without fault, and the warrant referred to the assessment and diagram and was duly signed and countersigned; that the three papers constituted together one document, and the signature of one was the signature of all;

that the statute requires only that the warrant shall be signed and the specification of that one is the exclusion of the others from the requirement. The plaintiff here supplements these points by the further fact that the statute expressly makes the record of these documents the sole source of the lien and that the assessment as a separate official act derives its force from its recordation. In certain respects, hereinafter pointed out, the assessment in the present case contains certain statements not found in *Dougherty* v. *Hitchcock*. The opinion is by Mr. Justice Rhodes. Judge Sprague concurred specially upon the last point discussed which related to a question entirely apart from the one here. Likewise, Chief Justice Sawyer concurred specially on other grounds, stating: "I am compelled to dissent as to the other points discussed in the opinion of my associates." Neither of these judges expressed any opinion in the Himmelman case. Speaking of the assessment, Judge Rhodes said: "This is an official act on the part of the superintendent, and its character and authenticity can be attested in only one manner, and that is the official signature of the superintendent. Its official character must be made to appear on its face."

Reference is made to *Himmelman* v. *Danos* where it was held that the record was inadmissible because not signed. But, as was already shown, the record in the present case was signed and it was not decided in the Himmelman case that such a record as we have here would not be admissible. Judge Rhodes, in his opinion, proceeds: "But it is contended that it (the assessment) was helped out by the warrant, which was signed by the superintendent, and countersigned by the auditor, and was attached to the document. This position might be maintained if the two papers constituted only one official document, but they are distinct, and each must be in truth what it purports to be before they can be attached together for the purposes specified in the act. The position contended for would make a summons without the signature of the clerk valid, if it was attached to the other papers constituting the judgment-roll."

Answering the point that the statute requires only that the warrant shall be signed, the opinion continues: "There would be great merit in the argument if either of these documents could be regarded as official in the absence of an official signa-

ture," and the reasoning is that the requirement as to the warrant was unnecessary "for the issuing of the warrant as necessarily imports and includes its signature as the averment that a summons was issued by the clerk imports that it received his official signature."

There can be no doubt of the meaning of this decision—namely: that an assessment is invalid unless it shows on its face that the superintendent made it. There can be, however, some doubt as to whether the case demanded the decision. The document read:

"ASSESSMENT.

"Assessment for grading Clay Street, from Jones to Leavenworth Street, as per contract made with M. W. Griffin on the third day of July, 1863." Then follows a statement of work and its cost, rate of assessment, description of lots and names of owners, and nothing more. The warrant is a declaration by the superintendent—"by virtue of the authority vested in me as superintendent, do authorize and empower M. W. Griffin, his agents or assigns, to demand and receive the several assessments upon the assessment and diagram hereto attached." There is nothing on the face of the assessment to show who made it and there is nothing in the warrant to show that the assessment was made by the superintendent. The diagram was omitted from the statement of facts and we do not know what it contained.

In the present case the assessment does show that it was made by the superintendent unless we must wholly disregard what it declares—namely: "Pursuant to statute, I, E. S. Shaver, as superintendent of streets . . . do hereby assess and appraise as shown hereinafter and in the diagram attached hereto." The warrant refers to the assessment and diagram as made by the superintendent and as attached thereto. No such relationship of the three documents appeared in the cases cited. In the Himmelman case the only papers before the court were what purported to be copies of a record which latter was not authenticated in any way. In the Dougherty case the assessment failed to show either by signature or by anything on its face indicating by whom it was made, and the absence of such evidence or any evidence of its authenticity, it seems to us, presents a different question from the one here. We have in this case a group of documents which, attached

together and duly recorded, becomes the basis of the liens. The statute requires that but one of these three papers (the warrant) shall be signed by the superintendent. It is quite true that the superintendent cannot make up a record having validity from papers which do not in some way show their authenticity, i. e., that they were his work or that of some one authorized to do it. But here not only the face of the assessment so shows but the superintendent testified, apparently without objection, that he made the assessment offered in evidence; that the papers offered in evidence were the original assessment, return, diagram, and warrant, which were recorded in his office and under which the improvement of Walnut Street was done. In *Williams* v. *McDonald,* 58 Cal. 527, in the resolution of intention the signature was printed, whereas the act required that it should be "signed by the clerk." He testified that he used a printed form and the court held that there was no objection to his adopting the printed signature. In *Auzerais* v. *Naglee,* 74 Cal. 60, 69 [15 Pac. 371], the court, in speaking of the acknowledgment necessary to take a contract out of the operation of section 360 of the Code of Civil Procedure, said: "The statute does not require the party to *subscribe* his name, and it is sufficient if it be evident from any part of the instrument of acknowledgment that the debtor named in it has given his assent, and as was said in *Rowe* v. *Thompson,* 15 Abb. Pr. (N. Y.) 377, 'as the legal definition of the word "signed" is the act whereby a person gives or declares assent by name, sign, or mark, it follows that it is enough if it appears in the body or upon the margin, or elsewhere of the instrument, that such assent has been given. If the attestation appears anywhere upon the face of the writing, it is sufficient, and the party thus attesting is bound as effectually as if he had subscribed his name at the foot.' "

In a holographic will the following was held sufficient without being subscribed by the testator: "I, George W. Johnson, do make," etc. (*In re Johnson Estate,* Myrick Prob. (Cal.) 5.)

The statute requires that the summons issued in an action shall be signed by the clerk. In *Ligare* v. *California S. R. R. Co.,* 76 Cal. 610, [18 Pac. 677], it was held that the printed name of the clerk was sufficient where the seal was affixed.

The lithographic signature of the secretary of an irrigation district was held sufficient, when adopted by him, in *Hewel* v. *Hogin,* 3 Cal. App. 248, [84 Pac. 1002]. (*Pennington* v. *Baehr,* 48 Cal. 565.)

Respondents cite *Ede* v. *Cunio,* 126 Cal. 167, 171, [58 Pac. 538], where the court, speaking of the assessment, diagram, and warrant, said: "Each of those documents essential to the creation of a lien is separate and distinct, and is to be complete in itself." This is undoubtedly true, but the question remains—When, i. e., in what condition must the assessment be to entitle it to be treated as "complete"? Here the only objection made was that it was not signed by the superintendent. We think it sufficiently appears on the face of it that it was his official act. He treated it as such, attached it to the other documents and recorded it and certified to the record.

Under the more liberal rules in recent cases given to the requirements of the statute we think we are authorized in holding that the objection now made is not such as to deprive the contractor of the lien to which it would otherwise be entitled. (*O'Dea* v. *Mitchell,* 144 Cal. 374, [77 Pac. 1020]; *Haughawout* v. *Raymond,* 148 Cal. 311, [83 Pac. 53]; *Burns* v. *Casey,* 13 Cal. App. 154, [109 Pac. 94].)

The judgment is reversed.

Hart, J., and Burnett, J., concurred.