[Civ. No. 2630.   Second Appellate District, Division One.—March 21, 1919.]

# WILLIAM J. O'NEIL, Respondent, v. A. W. BRODE, Appellant.

[1] MUNICIPAL CORPORATIONS — PARKS AND PLAYGROUNDS — ACQUIRING OF LANDS — SALE OF PROPERTY FOR DELINQUENT ASSESSMENTS.— Under the act of the legislature approved April, 1909 (Stats. 1909, p. 1066), authorizing the acquiring of land by municipalities for purposes of public parks or public playgrounds, the establishment of assessment districts and the assessment of the property therein to pay the expense of acquiring such land, it is the fact of the delinquency of a given assessment, rather than the attachment of a certificate as to that fact, which establishes the jurisdiction of the board of public works to proceed with the sale of the property.

[2] ID.—CERTIFICATE OF SALE — EXECUTION — FACSIMILE STAMP SIGNATURE.—The requirement of such act that, after making sale of property for delinquent assessment, the street superintendent must execute in duplicate a certificate of sale, one copy of which is to be filed in the superintendent's office and the other delivered to the purchaser, is sufficiently complied with by the signing of one certificate by the president of the board of public works (such board acting in the stead of the street superintendent), which is delivered to the purchaser, and the signing of the other by a *facsimile* stamp signature of the same officer, which is impressed by the assessment clerk at the direction of such officer.

[3] ID.—EXECUTION OF DEED BY PRESIDENT OF BOARD.—The board of public works has power to direct its president to make all deeds of property sold for delinquent assessments, as the act to be done is one which involves no discretion on the part of the board.

[4] ID.—AUTHORITY OF PRESIDENT—DATE OF RESOLUTION IMMATERIAL. The fact that the resolution of the board of public works directing the president thereof to execute such deeds was adopted before the passage of the act under which the assessment was levied and sale had does not affect his authority to execute such deed.

[5] ID.—NOTICE TO REDEEM—RECITAL OF UNAUTHORIZED ITEM—EFFECT. Where the notice to redeem, as given by the purchaser, sufficiently refers to the improvement for which the property was sold and states the amount required to be paid to effect redemption, the fact that it also contains a statement that there will be added "$3.00 for the service of this notice and making affidavit thereto, as allowed by law," even though such charge is unauthorized, does not invalidate the notice.

[6] ID.—SERVICE OF NOTICE—SUFFICIENCY OF AFFIDAVIT.—The affidavit
of service of the notice to redeem is not faulty in failing to state
the name of the person upon whom service was made, it stating that
on a given date the purchaser did "serve upon the owner and occu-
pant of said property a notice," etc.

APPEAL from a judgment of the Superior Court of Los
Angeles County. John W. Shenk, Judge. Reversed.

The facts are stated in the opinion of the court.

George H. Moore for Appellant.

Conner, Heath & Maxwell for Respondent.

JAMES, J.—Plaintiff had judgment quieting his title to
a certain parcel of land located in the city of Los Angeles,
from which judgment defendant has appealed. Defendant's
claim of title to the land in question was based upon a deed
issued by the board of public works of the city of Los Angeles,
which deed had for its foundation a sale for delinquent as-
sessment made under the authority of an act of the legislature
approved April, 1909. (Stats. 1909, p. 1066.) This act au-
thorized the acquiring of property by municipalities for pur-
poses of public parks or public playgrounds. The trial court
held with the plaintiff that there were such irregularities in
the procedure adopted by the assessment officers and in the
notice to redeem as given by the defendant, as to invalidate
the deed. It is admitted by the plaintiff that all the proceed-
ings taken up to the time when assessments became delinquent
were regular.

[1] 1. The first asserted defect consists in the failure of
the board of public works to make a certificate upon the
assessment-roll of the fact that the assessments had become
delinquent. A certificate was in fact made, but was signed
"Board of Public Works, by R. I. Follmer, Assistant Clerk."
Of course, it must be conceded that there was no authority
in a clerk to execute the certificate on behalf of the board, so
that the real question presented is as to whether the failure
of the board to make such a certificate was vital to the pro-
ceedings which followed. Section 18 of the act referred to, as
relating to the making of assessments, after declaring that
notice shall be given by publication of the fact that the assess-

ment has been recorded in the office of the street superintendent (the board of public works acting in the stead of such an official under the charter of the city of Los Angeles), and that the sums assessed are due and payable within thirty days from the date of the first publication of the notice, provides that "on the expiration of said period of thirty days, all assessments then unpaid shall become delinquent, and the street superintendent shall certify such fact at the foot of said assessment-roll, and mark each such assessment 'Delinquent,' and add five per cent to the amount of each delinquent assessment." The section immediately following provides that within ten days "from the date of such delinquency" the street superintendent shall begin the publication of a list of delinquent assessments, which shall contain a description of each parcel of the property delinquent, the name of the owner as stated in the assessment-roll, and the amount of the assessment, penalty, and costs due, including the cost of advertising, and shall append a notice that unless each delinquent assessment is paid, the property upon which such assessment is a lien will be sold at public auction at a time stated in the notice. It will be noted that the act declares that the unpaid assessments, upon the expiration of thirty days from the date of publication of the notice first referred to, shall become delinquent, and that the street superintendent shall, within ten days from the date of delinquency, begin the publication of a list of the delinquent assessments. The assessments under the express terms of the act are delinquent before the certificate is required to be made at the foot of the assessment-roll. The subsequent notice to be published by which the owners are to be informed that unless the delinquent assessments, together with penalties and costs, are paid, their property will be sold, is not required to contain the certificate so attached to the roll, and it does not appear that the making of such certificate is at all a prerequisite jurisdictional matter which must occur before the last notice to the property owner is published. It is not contended that there was a failure of the board to mark the overdue assessments "delinquent" as required by the act; hence, upon the roll itself there would be indicated which of the assessments had not been paid and were subject to the delinquency penalty. We think it was the fact of delinquency, rather than the attaching of a certificate as to that fact, which established the jurisdiction of the board

to proceed with the sale of the property. Direct authorities bearing upon this question are not many, but the reasoning of the supreme court in *Bienfield* v. *Van Ness,* 176 Cal. 585, at page 591, [169 Pac. 225], we think is applicable here.

[2]  2. The act further required that after making sale of property for delinquent assessment the street superintendent must execute in duplicate a certificate of sale, one copy of which is to be filed in the superintendent's office and the other delivered to the purchaser. The certificate of sale was made in duplicate, except that one copy was signed by the president of the board of public works by his own hand and the other was signed by a *facsimile* stamp signature of the same officer, which was impressed upon the document by the assessment clerk. This clerk, however, testified that he stamped the signature on the duplicate at the direction of the president of the board; that the original was delivered to the purchaser and the one signed by the rubber stamp retained in the files of the office. We think that the duplicate was sufficiently signed by the president of the board and that for the purpose he adopted the rubber stamp as expressing his signature. That he had power to direct the attaching of the stamp by the clerk and that the signature in law would become his own act, we have no doubt. (*Williams* v. *McDonald,* 58 Cal. 527; *Pennington* v. *Baehr,* 48 Cal. 565; *Jansen* v. *McCahill,* 22 Cal. 563, [83 Am. Dec. 84].)

[3]  3. The deed issued to defendant as purchaser at the sale was signed by the president of the board of public works. It is claimed that its execution in that manner was unauthorized, because the charter of the city of Los Angeles provides that "all documents required to be signed or executed by the board of public works, shall be signed on order of the board by the president or by two members thereof." Prior to the time when the proceedings were instituted and prior to the adoption of the act under which the same were taken, the board of public works had adopted a general resolution directing, among other things, "that the president of the board of public works, or, in the absence of the president, two members thereof, be and they hereby are authorized and directed in the name of and on behalf of said board, to sign and execute all certificates of sale and all deeds of property sold for delinquent assessments for the opening and widening of streets, alleys, and other public places." It was under

authority of this resolution that the president of the board made the deed which was delivered to the appellant. We think that the board had power to direct its president to make all deeds of the nature indicated in the resolution, as the act to be done was one which involved no discretion on the part of the board—was purely a ministerial function which could not be avoided. [4] Nor do we think that the fact that this resolution was adopted before the act of the legislature under which the proceedings were taken makes any difference. The authorization and direction given by the resolution applied to all proceedings and such acts connected therewith as might then or in the future be required to be performed as an official duty. We have given some attention to that subject in a case recently decided, the decision in which, however, is not yet final. (*Hayes* v. *Handley et al.,* 28 Cal. App. Dec. 592. [Decided by supreme court February 18, 1920, 187 Pac. 952).]

[5] 4. The notice to redeem as given by the appellant as purchaser sufficiently referred to the improvement for which the property was sold and stated the amount required to be paid to effect redemption. The fact that it contained the statement that there would be added also "$3.00 for the service of this notice and making affidavit thereto, as allowed by law," even though such charge was unauthorized, did not invalidate the notice. (*Simmons* v. *McCarthy,* 118 Cal. 623, at page 627, [50 Pac. 761].) [6] The affidavit of service of the notice to redeem we do not think was faulty in failing to state the name of the person upon whom service was made. The law requires such notice to be served "upon the owner of the property and upon the occupant"; the affidavit set forth that appellant, on the sixth day of February, 1914, as purchaser, did "serve upon the owner and occupant of said property a notice," etc. It was shown by the evidence of appellant that he in fact served a notice to redeem upon the plaintiff, who was also upon the property at the time. We think the objections as raised as to the irregularities which occurred subsequent to the date of delinquency of the assessments do not show such substantial departure from the requirements of the act as to invalidate the title obtained by the appellant.

The judgment appealed from is reversed.

Conrey, P. J., and Shaw, J., concurred.