[L. A. No. 3214.   Department Two.—January 29, 1914.]

THE BARBER ASPHALT PAVING COMPANY (a Corporation), Respondent, v. PAUL BANCROFT et al., Appellants.

[L. A. No. 3213.   Department Two.—January 29, 1914.]

THE BARBER ASPHALT PAVING COMPANY (a Corporation), Respondent, v. A. L. ROSS et al., Appellants.

MUNICIPAL CORPORATIONS—STREET ASSESSMENT—COMPLETION OF WORK WITHIN TIME.—The right to recover a street paving assessment depends upon the completion of the work within the time limited by the contract or a valid extension thereof.

ID.—ACTION TO RECOVER ASSESSMENT—SUFFICIENCY OF COMPLAINT IN SHOWING TIME OF COMPLETION OF WORK.—A complaint in an action by a contractor to recover a paving assessment which alleges that under the contract with the city, October 17, 1907, was fixed as the time for the completion of the work; that, on September 23, 1907, the common council authorized the superintendent of streets to extend the time within which the work might be completed, sixty days from and after October 17, 1907; that on September 25, 1907, that official "extended the time for the completion of said work for sixty days from and after the 17th day of September, 1907, and indorsed such extension of time on said contract"; that the plaintiff completed the work "before the 12th day of December, 1907," sufficiently shows, in the absence of special demurrer, that the work was done within time.

ID.—UNCERTAINTY IN PLEADING—TAKING ADVANTAGE OF UNDER GENERAL DEMURRERS.—The uncertainty in the pleading cannot be taken advantage of on appeal under general demurrers which were not argued.

ID.—ASSESSMENT AGAINST UNKNOWN OWNERS—CONCLUSIVENESS OF CERTIFICATE OF STREET SUPERINTENDENT.—An assessment for street

paving is not void on its face because the street superintendent assessed all of the pieces of property involved to "unknown" owners, where he has made his certificate that the ownership of such properties was unknown to him; and in an action to recover the assessments evidence in the shape of records from the auditor's office showing the names of the persons to whom the lands along the street had been assessed, is properly rejected.

ID.—POWER OF ATTORNEY—EXECUTION OF PAVING CONTRACT—MEANING OF "ASPHALT PAVEMENT" AND "ASPHALT MACADAM PAVEMENT."— A power of attorney authorizing the execution of a contract "for laying asphalt pavement" on a certain street is sufficient to authorize the execution of a contract for paving the street with "asphalt macadam pavement," where the evidence, though conflicting, warrants the conclusion that the term "asphalt pavement" is the general designation within which the specific name "asphalt macadam pavement" is properly included.

ID.—CONTRACT FOR STREET WORK—EFFECT OF CLAUSE LIMITING HOURS OF LABOR.—A specification in a contract for street paving that no person doing work thereunder shall be required to labor more than eight hours a day, except in cases of extraordinary emergency, does not invalidate the contract, where there is a general custom of the authorities in charge of such work to demand a clause in every contract similarly limiting the hours of labor.

ID.—CUSTOM AS TO HOURS OF LABOR—CONTROLLING EFFECT.—Such custom does not necessarily control a contractor; he is bound by the law alone. And it cannot be said as a matter of law that all bidders would accept a custom rather than the letter of the law as the controlling factor in their offers to do the work.

ID.—BOND BY CONTRACTOR—CONSTITUTIONALITY OF STATUTE REQUIRING.— The requirement of the Vrooman Act that a public improvement contractor shall give a bond to the superintendent of streets which shall inure to the benefit of all persons who perform labor on or furnish materials to be used on the improvement, is constitutional.

APPEALS from judgments of the Superior Court of San Diego County and from orders refusing new trials. T. L. Lewis, Judge.

The facts are stated in the opinion of the court.

Luce & Luce, and Alfred C. Skaife, for Appellants.

Guy Le Roy Stevick, L. A. Redman, and Jewel Alexander, for Fidelity and Deposit Company of Maryland.

Doolittle & Morrison, for Respondent.

MELVIN, J.—Appeals have been taken by the defendants and appellants in two cases from the judgments and orders denying motions for new trials. As the two actions are exactly similar they have been consolidated for the purposes of this decision.

The plaintiff corporation, a contractor with the city of San Diego, sued to recover from the defendants an assessment levied for the paving of Fifth Street in said city. General demurrers to the complaints were filed but were overruled. There was no argument on said demurrers. The trial was had before the court without a jury, resulting, as indicated above, in judgments for the plaintiff.

Appellants contend that their demurrers should have been sustained. There was an allegation in each complaint that under the contract with the city, October 17, 1907, was fixed as the time for the completion of the work; that, on September 23, 1907, the common council authorized the superintendent of streets to extend the time within which the work might be completed, sixty days from and after October 17, 1907; that on September 25, 1907, that official "extended the time for the completion of said work for sixty days from and after the 17th day of September, 1907, and indorsed such extension of time on said contract." It was also averred that The Barber Asphalt Paving Company completed the work "before the 12th day of December, 1907." As the right to recover for the work depends upon its completion within the time limited by the contract or a valid extension thereof (*Turney* v. *Dougherty,* 53 Cal. 619; *Beveridge* v. *Livingstone,* 54 Cal. 56; *Kelso* v. *Cole,* 121 Cal. 123, [53 Pac. 353] ; *Heft* v. *Payne,* 97 Cal. 109, [31 Pac. 844] ; *Union Construction and Paving Co.* v. *Campbell,* 2 Cal. App. 534 [84 Pac. 305]), appellants assert that the complaints, failing to set forth that necessary element of a cause of action, should fall before the general demurrers. Respondent asserts that the specifying of *"September"* as the month from which the extension of the time should begin to run was a clerical error. The indicated month should have been *"October."* This is most probably true, but in the absence of any special demurrer the complaint was sufficient; therefore the mistaken, if mistaken, use of the word "September" is immaterial. It appears sufficiently that the superintendent of streets was *directed* to make the extension for

sixty days from and after October 17, and that the work was done ''as specified and described in the contract'' before the twelfth day of December, 1907. The phrase ''before the twelfth day of December, 1907,'' might refer to a time prior to the date alleged as sixty days after ''September'' 17th, or the pleader may have depended upon the presumption of official duty properly performed by the superintendent of streets in extending the period for the completion of the work to sixty days from *October* 17th. Of course there would be and is an uncertainty in the pleadings, but appellants may not now take advantage of it under general demurrers which were not argued, and after failing to raise the point until after the appeals reached this court. Each complaint alleges the performance of the work, and the issuance of the warrant, diagram, certificate, and assessment-roll and then follows the averment: ''That said assessment was duly given and made and that all of said things were done at the times and in the manner prescribed by law.'' This amounted *prima facie* to a pleading that the work was done within the time allowed by law.

Appellants assert that the assessment-roll was void on its face because the superintendent of streets assessed all of the pieces of property involved in the proceeding to improve Fifth Street to ''unknown'' owners. This, they say, was so flagrant a violation of the duty of the superintendent of streets that the assessment-roll amounts to nothing—is in defiance of the law requiring him to make the assessment in the name of the owner if known to him. It is argued that the superintendent of streets may not sit idly and refuse by inquiry or by inspection of assessment-rolls to discover the ownership of the property involved. Section 8 of the Vrooman Act (Stats. 1889, p. 166) provides that the assessment shall show ''the name of the owner of each lot, or portion of a lot (if known to the street superintendent); if unknown the word 'unknown' shall be written opposite the number of the lot.'' It has been repeatedly held that when the superintendent of streets makes his certificate that the ownership of a particular piece of property is unknown to him, such certificate is conclusive of the fact so certified and may not be collaterally attacked. There was such certificate in the proceedings now under review, and we cannot say, as matter of law, that the

officer making it was not ignorant of the ownership of all of the parcels of land which had been assessed. (*Chambers* v. *Satterlee,* 40 Cal. 518; *Himmelmann* v. *Steiner,* 38 Cal. 177; *Hewes* v. *Reis,* 40 Cal. 261; *Dougherty* v. *Miller,* 36 Cal. 89.) It has even been held that one who admittedly owns part of a lot but demands that it be assessed as a whole may not complain if the superintendent of streets assess it to "unknown" owners. (*McSherry* v. *Wood,* 102 Cal. 650, [36 Pac. 1010].) We conclude therefore that the assessment-roll was not void upon its face; and for the same reasons we are of the opinion that the trial court committed no error in refusing to admit evidence in the shape of records from the auditor's office showing the names of the persons to whom the lands along Fifth Street had been assessed.

The next attack of appellants is made upon the authority of the officer of the plaintiff corporation to execute the contract with the city to pave Fifth Street. The basis of the said attack is the alleged insufficiency of the power of attorney held by C. A. Williams, who executed the contract on behalf of The Barber Asphalt Paving Company. It appears unquestionably that he held a power of attorney authorizing him on behalf of that corporation to enter into a contract "for laying asphalt pavement on Fifth Street in the city of San Diego"; but the contract which was actually executed provided for the paving of that street with "asphalt *macadam* pavement." Appellants believe that these verbal differences relate to methods and materials entirely distinct. There was some testimony given by experts tending to establish different meanings of the two expressions used respectively in the power of attorney and in the contract. Other witnesses testified that any pavement made with asphaltum might correctly be termed an "asphalt pavement." Upon this conflict the lower court might well decide that the term "asphalt pavement" was the general designation within which the specific name "asphalt macadam pavement" was properly included. Under such an interpretation the power of attorney was sufficient.

There was a stipulation in the contract that no person doing work thereunder in the paving of Fifth Street should be required to labor more than eight hours a day, except in cases of extraordinary emergency. Appellants assign this stipula-

tion as one which rendered the agreement void.  It is admitted in the briefs of appellants that in California under the decisions such a provision in a contract does not render it void unless in the notices calling for bids or in the detailed specifications for the work a like requirement is inserted (*Flinn* v. *Peters,* 3 Cal. App. 235, [84 Pac. 995] ; Page on California Street Laws, sec. 165), but we are asked to extend the doctrine in these cases and to hold that where the general custom of the authorities in charge of such work is to demand a clause in every contract, similarly limiting the hours of labor, the bidder is presumed to be influenced thereby just as if the notices and specifications had set forth such limitation as one of the necessary parts of the contract.  Defendants offered to prove such a custom by the testimony of a former deputy in the city attorney's office.  It is argued that, knowing this custom, the bidder would be influenced to ask more for the work than would be charged if he were not bound by the requirement respecting the hours of labor.  The answer to this is that custom does not necessarily control a contractor.  He is bound by the *law* alone.  If, as counsel assert, the stipulation respecting the hours of labor is one which may not be lawfully enforced the contractor is at liberty to ignore the custom, to treat it as ''more honored in the breach than in the observance,'' and to demand the execution, by the proper officer of the city, of a contract not containing the objectionable matter.  If, after having obtained the contract as the lowest bidder, under no compulsion of law to circumscribe the hours during which employees shall work, the contractor choose in obedience to *custom* as a matter of real or supposed economy to accept an agreement like this, it is no concern of defendants.  We cannot say as matter of law that all bidders would accept a custom rather than the letter of the law as the controlling factor in their offers to do the work.  Such contracts are between the city and the person or corporation agreeing to do the work and objections to the conditions therein regarding labor or compensation are not available to the owner of the assessed property unless the conditions affected the price paid.  (*Hellman* v. *Shoulters,* 114 Cal. 158, [44 Pac. 915, 45 Pac. 1057].)  The rule with reference to the wages paid under the provisions of the contract

is the same as that with reference to the hours of labor. (*Flinn* v. *Peters,* 3 Cal. App. 235, [84 Pac. 995].)

Appellants attack section 6½ of the Vrooman Act. This is the section requiring a contractor to give a bond to the superintendent of streets which shall inure to the benefit of all persons who perform labor on or furnish materials to be used on the improvement. Mr. Page in his work on California Street Laws reviews the arguments for and against the constitutionality of this section of the statute. In section 153 this language is used by him: "We have already seen that the power to assess exists only for a public purpose. 'The taxing power, whether it be executed in the form of general taxation or of local assessment, cannot be upheld, when the purpose in view can be judicially seen to be other than public.' Moreover, local assessments are upheld upon the theory of benefits. It is arguable that a bond solely for protection of laborers and materialmen is not for a public purpose; and it may also be said that it does not benefit the property. The requirement of such a bond clearly tends to increase the cost to the owners, for the contractor must consider its cost to him in making his bid. It might therefore be said to cast an unauthorized burden upon the property owner. Upon the other hand, the section may be upheld upon one of two theories. 1. It may be said that the requirement, by protecting claimants, makes the quick completion of the work more probable, because parties might hesitate to furnish labor or materials upon the personal credit of the contractor alone. This might be said to constitute a public purpose. 2. It is arguable that this requirement is merely incidental, that the increased cost is likely to be so small as to be unworthy of consideration, and that it is a reasonable regulation as to the procedure." We think that the arguments presented by Mr. Page in favor of the constitutionality of the section are sound and we unhesitatingly adopt them in declaring the constitutionality of said section 6½ of the Vrooman Act. The case of *Gibbs* v. *Tally,* 133 Cal. 374, [60 L. R. A. 815, 65 Pac. 970], is not authority to the contrary. The court was there considering a requirement in the Mechanic's Lien Law for the execution of a bond in favor of contractors and materialmen which was held to be unreasonable as placing an undue burden upon the owner. The two laws are dissimilar. The

one had reference to contracts between private parties; the other to contracts in which cities are interested parties. In the one case the owner would be placed under an unreasonable burden; in the other the obligation would be upon the sureties of the contractor and the incidental cost to the property owner would be outweighed by the promptness in completing the work and the greater certainty of its execution.

Appellants introduced certain testimony tending to show that the pavement which The Barber Asphalt Paving Company agreed to lay was subject to a patented process. The court found that the asphalt macadam described in the complaint was not "a patented paving material composed by a patented process which the patentee controlled and retained absolutely the right to use and to sell to others, and which said patentee charged a royalty for" and that plaintiff did not alone hold the right to put down such pavement in San Diego and that defendants were not "deprived of the right to elect to perform the work provided for in said proceedings, and plaintiff did not control and monopolize said work as against all or any competitors." These findings are attacked as unsupported by the evidence.

We think they are supported. The showing of appellants that there was a patented process for that kind of pavement was very meager. There was no testimony that at the time the contract was made such patent existed. Mr. Creswell who acted for the plaintiff knew nothing of any such patent when he signed the contract. It was shown that plaintiff had constructed asphalt macadam pavement on many streets in San Diego and no question had been raised about its being a patented process.

The judgments and orders are affirmed.

Lorigan, J., and Henshaw, J., concurred.

Hearing in Bank denied.