[L. A. No. 4356.    In Bank.—September 29, 1915.]

P. A. THOMAS, Petitioner, v. R. W. PRIDHAM, as Chairman of the Board of Supervisors of Los Angeles County, Respondent.

ROAD DISTRICT IMPROVEMENT ACT—LOS ANGELES CHARTER—SECTION 7½, ARTICLE XI, OF CONSTITUTION.—Article VII of the charter of the county of Los Angeles is virtually identical with that part of section 7½ of article XI of the constitution relating to the formation of road districts and highway construction divisions, the power to provide for the formation of such districts and their management, under the permission of the electors, being confided, by this part of the charter, to the board of supervisors.

ID.—FORMATION OF ROAD DISTRICT—AUTHORITY OF SUPERVISORS—ACT OF 1907.—The "Road District Improvement Act of 1907" (Stats. 1907, p. 806) provides a scheme for the formation of a road district, the plan to originate with the board of supervisors of a county, an opportunity being given to defeat the creation of the contemplated district by the filing of objections in writing by a majority of the owners of land therein. The board is given authority, where no effective protest has been filed, to order the work to be done; to advertise for bids; to award the contract; to execute it on behalf of the supervisors by the presiding officer of the board; to accept the work when completed; to issue bonds for the indebtedness; and to provide by a "special assessment tax" upon all of the land within the district for payment of the principal and interest upon said bonds as the same shall become due.

ID.—LOS ANGELES CHARTER—ACT NOT REPEALED BY.—That portion of the charter of the county of Los Angeles which is based upon section 7½ of article XI of the constitution does not repeal the "Road District Improvement Act of 1907" in its application to that county.

ID.—CONSTRUCTION OF CONSTITUTION —FRAMING OF COUNTY CHARTERS —CONSTRUCTION OF CHARTER.—The constitution does not require the framers of county charters to include therein enactments equivalent to section VII of the Los Angeles County charter, but leaves with the people of each county in proposing a charter, the discretion to determine whether or not they desire the general law to be the only one upon which they might depend in matters pertaining to district assessments; and the provision of the Los Angeles charter that the board of supervisors *may* provide for the formation of road districts does not require the board to follow the procedure provided by section 7½ of article XI of the constitution, and it is at liberty to pursue either the method outlined by the charter or that set forth in the statute of 1907.

ID.—CONSTITUTIONALITY OF ACT OF 1907—ASSESSMENT OF PROPERTY
ACCORDING TO VALUE.—The Road District Improvement Act of 1907
is not unconstitutional in permitting the assessment of property
within the district formed under it according to its value rather
than in accordance with the benefits conferred.

ID.—CONSTRUCTION OF ACT OF 1907—HEARING FOR PROPERTY OWNERS—
NOTICE—PROTEST.—There is no merit in the contention that no
hearing for all owners of property in the district is provided for
in the act of 1907. Section 5 of the act (Stats. 1907, p. 809) does
provide for hearings after due notice by publication to all parties
concerned. While the right of protest in writing is limited to own-
ers of record as defined in the section, this limitation does not pre-
vent all persons (including those not owners of record) from
appearing before the board of supervisors and voicing their objec-
tions. The legislature may limit the right to protest by granting
it only to owners of record.

APPLICATION originally made to the Supreme Court for
a Writ of Mandate against the chairman of the board of su-
pervisors of Los Angeles County to compel him to sign a con-
tract and to fix the time for beginning and completing certain
road work.

The facts are stated in the opinion of the court.

Albert J. Sherer, Robert Young, Hartley Shaw, and Arthur
G. Baker, for Petitioner.

A. J. Hill, County Counsel, and Charles E. Haas, Deputy
County Counsel, for Respondent.

Arthur M. Ellis, *Amicus Curiae.*

MELVIN, J.—Petitioner asked that a writ of mandate issue
to compel the defendant, as presiding officer of the board of
supervisors of the county of Los Angeles, to sign a certain con-
tract and to fix the time for beginning and for completing
certain work on Los Angeles and Redondo road and Gould
Lane within Road District No. 36 of the county of Los An-
geles. An alternative writ was issued.

It is not denied by defendant that the contract was awarded
to plaintiff in proceedings under the provisions of the "Road
District Improvement Act of 1907" (Stats. 1907, p. 806).
The refusal of the defendant to sign the proffered contract is
based upon two contentions, the first being that the said act of

1907 has been superseded by the provisions of article VII of the charter of the county of Los Angeles and the second, that the act of 1907 is unconstitutional and void because said statute contemplates an assessment of property according to its value and not in proportion to the benefits arising from the improvement.

The petitioner takes the stand that there are two methods provided for the improvement in districts of county roads—one under the act of 1907 and the other under the provisions of the constitution and of the seventh article of the county charter. He points out the following facts: 1. The constitution and charter contemplate the creation within the limits of the county of a municipality with a form of government entirely its own and differing altogether from the temporary road district which may be established under the said act of 1907; and, 2. The methods of raising money to pay the expenses of improvements under the charter and the act of 1907 differ radically.

Examining section 7½ of article XI of the constitution we find this language:

"It shall be competent, in all charters, framed under the authority given by this section to provide, in addition to any other provisions allowable by this constitution, and the same shall provide, for the following matters." This is followed by specifications of the matters for which a county charter "shall provide," including the composition and election of boards of supervisors, the selection and compensation of other county officers, the specification of the powers and duties of public officials, the assumption by county officers of certain municipal functions, the fixing and regulation by the supervisors of the number of clerks and attachés in the several departments of the county government, and the payment of these assistants and of certain other officers whose selection is provided by general laws. After the enumeration of these matters following the mandatory verb "shall provide," section 7½ of article XI contains this language:

"All charters framed under the authority given by this section, in addition to the matters hereinabove specified, may provide as follows." . . .

"For the formation, in such counties, of road districts for the care, maintenance, repair, inspection and supervision only of roads, highways and bridges; and for the formation, in

such counties, of construction divisions for the construction
only of roads, highways and bridges; for the inclusion in
any such district or division, of the whole or any part of any
incorporated city or town, upon ordinance passed by such
incorporated city or town authorizing the same, and upon the
assent to such inclusion by a majority of the qualified electors
of such incorporated city or town, or portion thereof, pro-
posed to be so included, at an election held for that purpose;
for the organization, government, powers and jurisdiction of
such districts and divisions, and for raising revenue therein,
for such purposes, by taxation, upon the assent of a majority
of the qualified electors of such districts or divisions, voting
at an election to be held for that purpose; for the incurring
of indebtedness therefor by such counties, districts or divi-
sions for such purposes respectively, by the issuance and sale,
by the counties, of bonds of such counties, districts or divi-
sions, and the expenditure of the proceeds of the sale of such
bonds, and for levying and collecting taxes against the prop-
erty of the counties, districts or divisions, as the case may be,
for the payment of the principal and interest of such indebt-
edness at maturity.'' The rest of the paragraph provides
for an election and requires the assent of two-thirds of the
qualified electors of the county, district or division to author-
ize the indebtedness and makes provision for the collection of
an annual tax, the creation of a sinking fund and other perti-
nent matters. The quotation given above sufficiently illus-
trates the scope of the section.

Article VII of the charter of the county of Los Angeles is
virtually identical with that part of section 7½ of article
XI of the constitution relating to the formation of road dis-
tricts and highway construction divisions, the power to pro-
vide for the formation of such districts and their manage-
ment, under permission of the electors, being confided by this
part of the charter to the board of supervisors. (Stats. 1913,
p. 1491.)

The ''Road District Improvement Act of 1907'' (Stats.
1907, p. 806) provides a scheme for the formation of a road
district, the plan to originate with the board of supervisors
of a county, an opportunity being given to defeat the crea-
tion of the contemplated district by the filing of objections in
writing by a majority of the owners of land therein. The
board is given authority, where no effective protest has been

filed, to order the work to be done; to advertise for bids; to award the contract; to execute it on behalf of the supervisors by the presiding officer of the board; to accept the work when completed; to issue bonds for the indebtedness; and to provide by a "special assessment tax" upon all of the land within the district for payment of the principal and interest upon said bonds as the same shall become due.

We are satisfied that the portion of the charter of the county of Los Angeles which is based upon the constitutional provision which we have been examining does not repeal the "Road District Improvement Act of 1907," [Stats. 1907, p. 806], in its application to that county.

As we have seen, the constitution does not require the framers of county charters to include therein enactments equivalent to section VII of the Los Angeles County charter. This would indicate an intention to leave with the people of each county in proposing a charter, the discretion to determine whether or not they desire the general law to be the only one upon which they might depend in matters pertaining to district assessments. It seems to be conceded by respondent and by the *amicus curiae* that the people of a county are at liberty to adopt or to omit the scheme provided by section 7½ of article XI with reference to roads, but they contend that having embodied that plan within their charter, and the charter having received due legislative sanction, the people of Los Angeles County have thus availed themselves of a method of construction and improvement of roads totally at variance with the law of 1907. But article VII of the charter is, in itself, merely permissive. "The board of supervisors *may* provide for the formation of road districts" are the opening words of that article. There is no declaration in the charter that the supervisors must resort to the plan set forth in the constitution, if it seems proper to create road districts. The bare authority to employ that system is sought to be conferred upon the supervisors. Conceding that the omission of all mention of road districts from the charter would have left the supervisors free to follow the statutory plan of the law of 1907 (and that seems to be conceded) it follows that mere permission to form districts and to pursue the necessary steps to that end by a different method, would not prevent resort to the "Road District Improvement Law." It is clear that the framers of the charter intended to leave the supervisors

at liberty to pursue either the method outlined by that instru-
ment or that set forth in the statute of 1907. This conclusion
makes it unnecessary for this court to determine whether or
not a charter might be framed in such fashion as to prevent
the board of supervisors from resorting to the general law in
dealing with the roads of the county. It is also unnecessary
to decide whether or not such permissive language is effective
to make the plan outlined by section 7½ of article XI of the
constitution part of the law of the county. In other words
we need not here determine whether the charter may confer
merely permissive powers upon a board of supervisors. How-
ever, the case of *Mardis* v. *McCarthy*, 162 Cal. 94, [121 Pac.
389], appears to be directly in point on this question, as au-
thorizing such a course, as well as upon the proposition that
until the board of supervisors had acted under such permis-
sive authority, the charter cannot be held to contain any pro-
vision effective to suspend the operation in the county of gen-
eral laws relative to the matter. When the supervisors do
adopt such a plan, the provisions thereof so far as authorized
by the charter will "have the same sanction and the same ef-
fect that they would have if incorporated in the charter it-
self" (*Mardis* v. *McCarthy*, 162 Cal. 94, 100 [121 Pac.
389]), and the question presented as to the applicability of
general laws of the state regarding such matter will be an
entirely different one. Nor need we discuss the question, so
ably argued in the briefs, whether or not the law of 1907 is in
direct conflict with the plan set forth in the charter. If the
supervisors are not foreclosed by the terms of the charter
from resort to the general law, it makes no difference how
diverse may be the two systems of road improvement within
districts. It follows, therefore, that the writ must be made
peremptory and the respondent must be required to sign the
contract unless there be some defect in the "Road District
Improvement Act of 1907." Defendant attacks that statute
as being unconstitutional because it permits the assessment
of the property within the district according to its value
rather than in accordance with the benefits conferred.

Admitting that in specific instances the *ad valorem* system
of assessment for benefits has been upheld, nevertheless coun-
sel for respondent insist that the system is wrong and that it
violates the spirit and letter of the constitution of California.
(Art. I, sec. 14.) Assessments for local improvements ac-

cording to the value of the property assessed have been frequently attacked and generally upheld in this state and in other jurisdictions. The decisions in this state have generally followed *Burnett* v. *Mayor and Common Council of the City of Sacramento* in the 12th volume of the California reports. Mr. Justice Field, delivering the opinion of the court in that case said, among other things (p. 84), [73 Am. Dec. 518]) :

"The law in question avoids the injustice of general taxation for local purposes, and lays the burden upon the recipients of the benefit. It apportions the tax according to the assessed cash value of the adjacent property, which is as near an approximation to an equitable rule as can well be established. No rule could be adopted which would work absolute equality. An approximation to it is all that can be attained. The power of apportionment, with the power of taxation, is exclusively in the legislature. The constitution contains no inhibition to the tax, and prescribes no rule of apportionment. Security against the abuse of the power rests in the wisdom and justice of the members of the legislature, and their responsibility to their constituents. See *The People* v. *The Mayor of Brooklyn,* 4 N. Y. 419, [55 Am. Dec. 266], and the cases cited in the opinion of the court and the briefs of counsel, which latter are in the appendix to the volume, 607." In the very recent case of *Hunt* v. *Manning,* 24 Cal. App. 49, [140 Pac. 39], the same objection was made as that interposed by defendant here, that this very statute which we are here considering, was in conflict with section 14 of article I of the constitution in that it seemed to authorize the taking of private property without awarding compensation. It was there held that since the provisions of the act contemplated improvements upon highways which have been established, ordinarily it must be assumed that the owner of assessed property will not suffer damage different from that common to all such owners by reason of the work. In *Emery* v. *San Francisco Gas Co.,* 28 Cal. 372, the court speaking through Mr. Justice Sawyer said:

"The result of our investigation is, that there is no restriction in our constitution upon the power of the legislature to impose assessments to defray the expenses of public improvement in the nature of grading and planking streets, upon the property supposed to be benefited thereby in any district des-

ignated by the legislature, or the proper officers of municipal governments acting under the authority of law. And that it is authorized to apportion the amount to be raised according to value, according to the benefits received, in proportion to frontage or the superficial contents, or to adopt any principle of apportionment that can be referred to the general sovereign right of taxation as defined by Mr. Justice Ruggles, in *People* v. *Brooklyn.*"

Speaking upon the subject of upholding the right of assessment in a manner different from the *ad valorem* principle Mr. Justice Harrison in the opinion in the proceeding *In re Madera Irrigation District,* 92 Cal. 325, [27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac. 272], said: "The controversy upon this subject has almost invariably been against the 'front-foot' rule, and in favor of the *ad valorem* principle, and in nearly every state, unless it be New Jersey, the principle has been maintained that it is within the power of the legislature to adopt whichever rule it may select."

In *Fallbrook Irrigation District* v. *Bradley,* 164 U. S. 176, [41 L. Ed. 369, 17 Sup. Ct. Rep. 56], the supreme court of the United States was considering one of the objections made to the Wright Act; i. e., that it provided for the apportionment of assessments according to value. Mr. Justice Peckham, speaking for the court, said: "Assume that the only theory of these assessments for local improvements upon which they can stand is that they are imposed on account of the benefits received, and that no land ought in justice to be assessed for a greater sum than the benefits received by it, yet it is plain that the fact of the amount of benefits is not susceptible of that accurate determination which appertains to a demonstration in geometry. Some means of arriving at this amount must be used, and the same method may be more or less accurate in different cases involving different facts. Some choice is to be made, and where the fact of some benefit accruing to all the lands has been legally found, can it be that the adoption of an *ad valorem* method of assessing the lands is to be held a violation of the federal constitution? It seems to us clearly not. It is one of these matters of detail in arriving at the proper and fair amount and proportion of the tax that is to be levied on the land with regard to the benefits it has received, which is open to the discretion of the state lgislature, and with which this court ought to have nothing

to do. The way of arriving at the amount may be in some instances inequitable and unequal, but that is far from rising to the level of a constitutional problem and far from a case of taking property without due process of law."

In view of these decisions we feel that we must regard the matter as settled so far as this state is concerned. Defendant seems to rely largely upon the case of *Norwood* v. *Baker,* 172 U. S. 269, [43 L. Ed. 443, 19 Sup. Ct. Rep. 187], to support his contention that the *ad valorem* system of assessment is unconstitutional. In that case the court was considering the method of assessing property. It was reviewing the action of an inferior court in preventing by injunction the collection of an assessment levied for the opening of a street upon the property bounding and abutting upon that street without any consideration of the question whether or not said property was benefited. The facts were so greatly at variance with those involved in the case at bar that we can scarcely regard it as of value here. Moreover, that case did not hold that assessment of lands in a district for special benefits contravened any provision of the constitution of the United States. The real doctrine of *Norwood* v. *Baker* was explained in *French* v. *Barber Asphalt Paving Co.,* 181 U. S. 324, [45 L. Ed. 879, 21 Sup. Ct. Rep. 625], *Wight* v. *Davidson,* 181 U. S. 371, [45 L. Ed. 900, 21 Sup. Ct. Rep. 616], and *Duncan* v. *Ramish,* 142 Cal. 692, [76 Pac. 661]. In the opinion in the case last cited Mr. Justice Shaw points out the fact that as construed by later decisions of the United States supreme court, *Norwood* v. *Baker* may now be regarded merely as a case falling under the rule announced long ago in *Lent* v. *Tillson,* 72 Cal. 429, [14 Pac. 71], that a local tax of this nature "will not be upheld when the court can plainly see . . . that manifestly and certainly no such benefit can or could reasonably have been expected to result." Nor is there anything in conflict with our views expressed above in Mr. Justice Henshaw's opinion in *Spring Street Co.* v. *City of Los Angeles* and *Hamburger Realty & Trust Co.* v. *City of Los Angeles,* 170 Cal. 24, [148 Pac. 217]. Not the *method* of assessment prescribed by law but its *application* in that particular case was there under attack. We are of the opinion that the "Road District Improvement Act of 1907" is constitutional.

It follows that the alternative writ should be made peremptory requiring the defendant as chairman and presiding officer of the board of supervisors of Los Angeles County to execute the contract set forth in plaintiff's pleading and to fix the time for beginning and for completing the work therein specified. It is so ordered.

Lorigan, J., Lawlor, J., Sloss, J., and Angellotti, C. J., concurred.

Mr. Justice Shaw did not participate in the consideration or discussion of this case.

Rehearing denied. On denying a rehearing the court filed the following opinion on October 28, 1915:

MELVIN, J.—In denying the petition for rehearing the court wishes to say that all points made in the briefs but not discussed in the opinion were carefully considered. We find no merit in the contention that no hearing for all owners of property in the district is provided for in the act of 1907. Section 5 of the act (Stats. 1907, p. 809) does provide for a hearing after due notice by publication to all parties concerned. While the right of protest in writing is limited to owners of record as defined in the section this limitation does not prevent all interested persons (including those not owners of record) from appearing before the board of supervisors and voicing their objections. The legislature may limit the right to protest by granting it only to owners of record. (*Hellman* v. *Shoulters*, 114 Cal. 145, [44 Pac. 915, 45 Pac. 1057]; *German Sav. etc. Soc.* v. *Ramish*, 138 Cal. 126, [69 Pac. 89, 70 Pac. 1067].)

Sloss, J., Lawlor, J., and Angellotti, C. J., concurred.