[L. A. No. 5287. In Bank.—January 31, 1919.]

## W. C. DILLINGHAM et al., Respondents, v. W. O. WELCH, County Tax Collector, etc., Appellant.

ROAD DISTRICT IMPROVEMENT ACT—CONSTRUCTION—PURPOSE OF LEGIS-LATURE.—The Road District Improvement Act of 1907 (Stats. 1907, p. 807), like all statutes, must be read in view of the evident purpose of the legislature in its enactment.

ID.—ESTABLISHMENT OF GRADES OF STREETS WITHIN DISTRICT.—CON-STRUCTION OF ACT.—Section 2 of the Road District Improvement Act of 1907, providing that before passing any resolution of intention under the act, specifications for the *work* substantially the same as that described in the resolution of intention shall be furnished by some competent person who shall have been designated by the board of supervisors for that purpose by a resolution to be entered by the clerk upon the minutes of said board, and, except where there is already an official grade thereof, as a part of such specifications, grades shall be specified for *all* roads, streets, avenues, boulevards, lanes and alleys within the described district so far as the same are within such district, was intended to apply only to those roads and streets within the district upon which work was to be done, and the omission of the specifications to designate grades for all streets and avenues within the district did not deprive the board of supervisors of jurisdiction to pass the resolution of intention.

ID.—GRADING OF CONNECTIONS WITH INTERSECTING ROADS—DISCRETION OF ENGINEER—VALID PROVISION OF SPECIFICATIONS.—A provision in the specifications for the work that the contractor shall, without extra compensation, grade according to the engineer's directions, a safe, proper, and workmanlike connection with all intersecting public or private roads or driveways, does not constitute an unwarranted dele-gation of discretion by the board of supervisors to the engineer, which is fatal to the validity of the proceedings.

ID.—DEFINITENESS OF SPECIFICATIONS—EXCEPTION TO RULE.—While as a general rule specifications must definitely and with certainty describe the manner and extent of the work to be done, there is a well-recognized exception in the case of details of construction which do not appear and cannot with reasonable diligence and cost be ascer-tained in advance, or which will be disclosed only by the doing of the work, or any contingency which reasonable care and consideration would not foresee.

ID.—SUFFICIENCY OF NOTICE INVITING SEALED BIDS — REFERENCE TO SPECIFICATIONS.—Where the notice inviting sealed bids specifically announced that the work was to be done according to the specifica-

tions on file therefor, and such specifications were by reference made a part of the notice and on file at the office of the board and open to inspection by bidders, any ambiguity that may have inhered in the language of the notice was thereby cured.

ID.—LEVY OF ASSESSMENT—DETERMINATION OF BOARD—WHEN CONCLUSIVE.—The courts cannot interfere with the determination of the board of supervisors in the levying of a special assessment tax for the purpose of meeting bonds issued under the Road District Improvement Act of 1907, in the absence of a showing that a hearing was denied property owners before the board.

ID.—DECLARATION OF COMPLETION OF WORK — FAILURE TO VERIFY — IRREGULARITY.—Failure on the part of the superintendent of streets and contractor to verify the declaration of the completion of the work, as required by section 10 of the Road District Improvement Act of 1907, amounts to but an irregularity which does not affect the jurisdiction of the board of supervisors, nor the substantial rights of the property owners.

ID.—ROAD BONDS—TRANSFER OF MONEY FOR PAYMENT—DISCRETION.—The transfer or failure to transfer money from the county road funds to the special funds for the payment of road bonds under the Road District Improvement Act of 1907 is purely within the discretion of the board of supervisors.

APPEAL from a judgment of the Superior Court of Los Angeles County. Frank G. Finlayson, Judge. Reversed.

The facts are stated in the opinion of the court.

A. J. Hill, County Counsel, Edward T. Bishop, Deputy County Counsel, and Arthur M. Ellis, for Appellant.

W. S. Knott and J. L. Fleming, for Respondents.

Albert J. Sherer, Robert Young, Hahn & Hahn, and Clarence J. Walker, as *Amici Curiae.*

MELVIN, J.—Defendant appeals from a judgment whereby he is enjoined from collecting or enforcing a special assessment tax levied for the purpose of meeting bonds issued under the Road District Improvement Act of 1907.

The plaintiffs attacked upon several grounds the proceedings for the improvement of the roads which formed the basis and gave the alleged reason for the levy of the special assessment tax.

It was successfully contended by plaintiffs in the superior court that the board of supervisors had no jurisdiction to pass the resolution of intention to do the work, because the specifications did not designate grades for all streets and avenues within the district. Section 2 of the Road District Improvement Act of 1907 (Stats. 1907, p. 807) provides as follows:

"Before passing any resolution of intention under this act, specifications for work substantially the same as that described in the resolution of intention and for a district substantially the same as that described in the resolution of intention shall be furnished by some competent person who shall have been designated by the board of supervisors for that purpose by a resolution to be entered by the clerk upon the minutes of said board, and, except where there is already an official grade thereof, as a part of such specifications, grades shall be specified for all roads, streets, avenues, boulevards, lanes and alleys within the described district so far as the same are within such district."

In the proceeding with which we are now concerned the specifications designated the grades of all roads within the district upon which work was to be done, but did not fix grades for other roads. This, according to the theory of respondents, was an omission fatal to the acquirement of jurisdiction by the board of supervisors. There is no merit in this contention, as will readily appear from a study of the statute. It will be noticed that the specifications are to be for "work" within the designated district. The fixing of the grades of streets to be improved (or if they had been previously fixed the ascertainment of their locations) would be a part of the *work* to be done. The establishing of the grades upon streets not to be improved under the proceedings would not be a part of the *work*. It is true that the statute does provide that as part of the specifications grades shall be designated for "*all* roads," etc., within the described district, but the statute, read as a whole, does not justify the interpretation which respondents seek to give to its language. The statute, like all statutes, must be read in view of the evident purpose of the legislature in its enactment. That purpose was to insure the pre-existence of rational and proper grades when the physical work upon the roads to be improved should be actually undertaken. It was no part of the necessary work to fix or confirm grades upon roads not to be subject to the contemplated

improvement. By the terms of the act itself, the establishment of grades is *incidental* to the work to be done. The title of the act of 1907, which we are here considering, is, in part, as follows: "An act to provide for work upon public roads, streets, avenues, boulevards, lanes and alleys not within the territory of incorporated cities or towns; for the incidental establishment of grades thereof." Section 1 vests in the board of supervisors power to do many acts for the improvement of roads; to establish districts; and "as incidental to the exercise" of these powers, to establish official grades within said districts. The fixing of proper grades for streets or roads not contemplated in the work of improvement clearly would not be incidental to that work nor to the power of the board of supervisors in ordering it. A requirement for the fixing of grades for roads not to be improved would be utterly purposeless. The failure to establish such grades, therefore, did not deprive the board of supervisors of jurisdiction.

Respondents insist that there is another defect disclosed by the record which is fatal to the validity of the proceedings. The specifications contain a provision that "The contractor shall without extra compensation grade according to the engineer's directions, a safe, proper, and workmanlike connection with all intersecting public or private roads or driveways." It is contended that not only is this an unwarranted delegation of discretion by the board of supervisors to the engineer, but that it places him in a position to require a more onerous compliance with the specifications by one contractor than by another less favored. It is true that, as a general rule, specifications must definitely and with certainty describe the manner and extent of the work to be done. Such certainty is necessary for the benefit of the property owners in enabling them to determine whether or not they will themselves undertake the work, and also for the benefit of the bidders who, knowing just what may be required of them if successful, may compete intelligently for contracts. But the rule requiring definiteness of specification has an important exception which was stated as follows by Mr. Justice Shaw in the opinion in the case of *City Street Improvement Co.* v. *Kroh*, 158 Cal. 308, at page 317, [110 Pac. 933, 937]: "There is a well-recognized exception to this rule in the case of details of construction which do not appear and cannot with reasonable diligence and cost be ascertained in advance, or which will

be disclosed only by the doing of the work; or any contingency which reasonable care and consideration would not foresee. Such things may occur in every work of any considerable magnitude, and they must be left to be adjusted in accordance with general provisions of the contract, or by the discretion of the person or board supervising its performance. Examples of such details, and of lawful provisions for their determination, were considered in *Haughawout* v. *Hubbard,* 131 Cal. 679, [63 Pac. 1078] , *Belser* v. *Allman,* 134 Cal. 400, [66 Pac. 492] , *Banaz* v. *Smith,* 133 Cal. 106, [65 Pac. 309] , *Haughawout* v. *Raymond,* 148 Cal. 311, [83 Pac. 53] , *Chase* v. *Scheerer,* 136 Cal. 251, [66 Pac. 768], and *McCaleb* v. *Dreyfus,* 156 Cal. 204, [103 Pac. 924]. Of the provisions objected to in this case, the following come within this class and do not invalidate the contract. The contractor must grade the connections with intersecting roads to the satisfaction of the engineer employed by the commission.'' This quoted exception well applies to the problem before us and is a sufficient answer to the contention of respondents with reference to the specifications which they attack. In addition to the authorities cited in the above quotation, appellant aptly refers to *Thoits* v. *Byxbee,* 34 Cal. App. 226, 232, [167 Pac. 166] ; *Stanwood* v. *Carson,* 169 Cal. 640, 649, [147 Pac. 562] ; *Burnham* v. *Abrahamson,* 21 Cal. App. 248, 258, [131 Pac. 338].

Respondents also assert that there was no sufficient notice inviting bids. This is based upon the fact that while the resolution of intention and the resolution ordering the work done described it as ''grading and oiling'' of designated portions of certain streets, and ''the construction of cement sidewalks five feet in width, cement curbs and cement gutters'' along specified sides of certain streets, the notice inviting sealed bids described the contemplated work as ''the grading, oiling, and construction of cement sidewalks, curbs, and gutters on certain streets near the town of Bairdstown.'' It is asserted that this notice limited the work to sidewalks, curbs, and gutters; did not embrace grading and oiling of streets, and, therefore, was misleading to intending bidders. Such construction of the notice involves a forced interpretation of its language, but any ambiguity that may have inhered in the language taken by itself would disappear in view of the facts that the notice specifically announced that the work was to be done ''according to the specifications on file therefor'';

that said specifications were by reference made a part of the notice, and that they were on file at the office of the board and "open to inspection of bidders."

Another of the contentions of the respondents was that the tax and bonds are invalid because the declaration of the completion of the work was not verified. Section 10 of the Road District Improvement Act of 1907 provides that as soon as it may be done in good faith, there shall be filed with the clerk of the board of supervisors a declaration that the work has been completed according to contract. There is a provision that this shall be signed and verified by the superintendent of the work, and by the contractor or by some person who knows the facts, signing on the latter's behalf. There is a further provision that "Either signer may except from his signature and verification any amount or item to which he does not assent." While, of course, orderly procedure should have been followed, and while it is desirable that the superintendent and the contractor should be made to assume the responsibility of certifying to the facts, by verified writings, their failure so to do amounts to an irregularity which does not affect the jurisdiction of the board of supervisors, nor the substantial rights of the parties to this controversy. The very fact that under the law either may omit verification as to any item, emphasizes the directory character of the provision. (*Cake* v. *City of Los Angeles,* 164 Cal. 705, [130 Pac. 723].) In *Petaluma Rock Co.* v. *Smith,* 23 Cal. App. 100, [137 Pac. 290], it was held that, under the more liberal rules now operating with reference to street work and similar public improvements, the fact that the superintendent of streets did not sign the assessment for street improvements did not deprive the contractor of his right to a lien. Upon like principles we are constrained to hold against the respondents on this point. There is nothing in the opinion in *Barber Asphalt Paving Co.* v. *Costa,* 171 Cal. 138, [152 Pac. 296], which conflicts with this conclusion. In that case it was held that as a condition precedent to the power of a bidder to enter into a contract he must attach to his bid an affidavit that it is not a sham offer and that he intends no fraud nor collusion. In the case at bar there was nothing in the requirement for an affidavit which went at all to the jurisdiction of the board. The affidavit is not even made *prima facie*

evidence at the hearing upon all matters regarding the work which follows the declaration of completion.

Complaint is made that the board of supervisors failed to transfer any money from the county road funds to the special funds for the payment of the bonds, although in the resolution of intention the board had announced the decision so to do. Appellant aptly answers this complaint by saying that the bondholders cannot exercise the discretion of the board and should not be made responsible for any failure to transfer funds. The transfer or failure to transfer money from the general road fund is purely within the board's discretion, because that body is given power and it is made the duty of said board "in any event" to levy a special tax to meet the principal and interest of the bonds. This contemplates a situation in which the board should, in the exercise of its judgment, decline to transfer moneys from the general road funds.

Respondents assert that the assessment is so grossly excessive as to amount to confiscation of the property in the district. The contract for the work was let in 1911. The bonds were issued in November, 1914, and were payable in five years. It appears that the assessed value of the real property in the road district for 1915 was $28,420. The aggregate amount for which the bonds were issued was $24,258.43, and the argument is made that if the other roads in the district were improved at the same cost per linear foot the total indebtedness would far exceed the value of the land assessed. This argument goes into the realm of speculation whither we may not follow. The act of 1907 has been held to be constitutional. Under that act the right of the owners of real property to a hearing before the board of supervisors is protected. The *ad valorem* system of assessment is also upheld. (*Thomas v. Pridham,* 171 Cal. 98, [153 Pac. 933].) It is not shown by the pleadings or otherwise that a hearing was denied plaintiffs. Under the principles announced in *Thomas v. Pridham, supra,* and the authorities there cited, we may not interfere with the determination of the board of supervisors in the levying of the assessment.

No other alleged errors require discussion.

The judgment is reversed.

Sloss, J., Richards, J., *pro tem.,* Wilbur, J., and Angellotti, C. J., concurred.