[S. F. No. 11788. In Bank.—July 23, 1927.]

MUNICIPAL IMPROVEMENT COMPANY (a Corporation), Respondent, v. C. V. THOMPSON, as Chairman of the Board of Supervisors of the County of San Mateo, State of California, et al., Appellants.

[1] ROAD DISTRICT IMPROVEMENT ACT OF 1907—RESOLUTION OF INTENTION—NOTICE—TIME—JURISDICTION.—Under the Road District Improvement Act of 1907 (Stats. 1907, p. 806), as amended, providing that when, before the day of the hearing specified in the resolution of intention, twenty days have elapsed since the posting and the first publication of the resolution of intention, the board of supervisors shall have acquired power to proceed with such hearing and to take all other action in the proceedings authorized .by the act, where the first publication of the resolution of intention was on the fifteenth day of September and the posting on the 25th of September, the board had power to hear objections to the work on October 15th and after overruling them to order the work to proceed.

[2] ID.—COMPUTATION OF TIME.—The law takes no notice of fractions of a day, any fraction of a day being deemed a day unless in a particular case it is necessary to ascertain the relative order of occurrences on the same day; and where a reckoning is to be made from an act done, the day upon which it was done must, of necessity, be counted as one day, because if that day

---

1. Computation of time, notes, 7 **Am. Dec.** 250; 46 **Am. Rep.** 40; 78 **Am. St. Rep.** 372. See, also, 24 **Cal. Jur.** 579; 26 **R. C. L.** 745. General rule as to inclusion or exclusion of first and last days, notes, 49 **L. R. A.** 193; 15 **L. R. A. (N. S.)** 686. See, also, 24 **Cal. Jur.** 579; 26 **R. C. L.** 745.

2. Fractions of day in computation of time, notes, 26 **Am. Dec.** 234; 2 **Ann. Cas.** 135; **Ann. Cas.** 1914C, 95. See, also, 24 **Cal. Jur.** 577; 26 **R. C. L.** 735.

be excluded, the count, instead of being from the act itself, is really from the day following the doing of the act, which would be a subsequent point of time.

[3] ID.—PRIOR INDEBTEDNESS ON DISTRICT—CONSTRUCTION OF STATUTE.—It was the intention of the legislature that improvement proceedings under the Road District Improvement Act of 1907 should not be instituted until all indebtedness outstanding against the district and incurred by reason of prior proceedings under said act had been fully paid.

[4] ID.—CONSTITUTIONALITY OF ACT.—The Road District Act of 1907 is not invalid under the state and federal constitutions by reason of the fact that under section 26 of the act the property owner may not know of the amount of the special assessment tax to be paid by him until the final installment on the bonds is to be paid because of the fluctuation in the assessed values from year to year and because the tax on some of the lots in the district may become delinquent and some of the land owners be required to pay an undue proportion in order to make up a sufficient fund to pay said installments.

---

(1) 38 Cyc., p. 322, n. 93.    (2) 38 Cyc., p. 315, n. 47, p. 324, n. 6.
(3) 29 C. J., p. 607, n. 82.    (4) 29 C. J., p. 727, n. 81, p. 747, n. 34.

APPEAL from a judgment of the Superior Court of San Mateo County. George H. Buck, Judge. Reversed.

The facts are stated in the opinion of the court.

Franklin Swart, John D. Willard, Gilbert D. Ferrell, James T. O'Keefe, J. E. McCurdy and J. W. Coleberd for Appellants.

Kirkbride & Gordon for Respondent.

Everett W. Mattoon, County Counsel, Los Angeles County, and J. H. O'Connor, Assistant County Counsel, *Amici Curiae,* in Support of Petition for Rehearing.

SHENK, J.—This action was commenced in the superior court in and for the county of San Mateo to compel the chairman of the board of supervisors of said county to sign a contract awarded by said board to the plaintiff for the performance of certain street work in a proceeding had and taken under the Road District Improvement Act of 1907 (Stats. 1907, p. 806), as amended. From a judgment in

favor of the plaintiff the defendants have appealed. In their answer the defendants allege and now urge that the said proceedings are invalid for reasons which will be considered.

The resolution of intention was published on the fifteenth, twenty-second and twenty-ninth days of September, 1923, and the "Notice of Road District Improvement" was posted on September 25th. On October 15th the board of supervisors proceeded to hear such objections as were offered against the work, including those of the defendants other than the defendant chairman of said board, and on the same day the board adopted a resolution ordering the work to be done and fixing the time for the reception of bids on November 5th. Notice to bidders was duly posted and published, the bids were received, opened, and examined and on November 19, 1923, the board adopted a resolution awarding the contract to the plaintiff. Subsequently a form of contract was presented to the defendant chairman of said board for his signature. He refused to sign the contract on the ground that he had been advised by counsel for certain interested property owners that the proceedings were irregular and that he thought, in the interest of all concerned, the legality of the proceedings should be tested in court. This action was accordingly commenced to compel the execution of the contract.

[1] It is first contended that the board of supervisors was without jurisdiction to hear the objections to the work at the time the same were heard and disposed of by reason of an alleged insufficient notice of the passage of the resolution of intention. Section 5 of the act provides that printed copies of the resolution of intention headed "Notice of Road District Improvement" shall be "posted along the line of work described in said resolution . . . . , and published. . . . . Affidavits in proof of such publication and posting shall be filed with the clerk of the board of supervisors. When, before the day of the hearing specified in the resolution of intention, twenty days have elapsed since the posting and the first publication (they need not be simultaneous) of the resolution of intention, the board of supervisors shall have acquired power to proceed with such hearing and to take all other action in the proceeding as is in this act authorized."

We think the notice of hearing of objections was sufficient. Under well-recognized rules either September 25th, the date of the posting, should be included in the computation of the twenty-day period, or if that day be excluded, October 15th should be included. In either case the period of twenty days elapsed between the posting of the notice and the hearing of the objections. Under the peculiar wording of the statute the question would not seem to be determinable by the rule laid down in section 12 of the Code of Civil Procedure, which is a re-enactment of section 307 of the original Practice Act (Stats. 1850, p. 455). If the statute had been made to read that the objections should be heard at least "twenty days after the posting of notices," section 12 of the Code of Civil Procedure would require that September 25th be excluded and October 15th be included and the twenty-day period would intervene. But the statute requires that twenty days must elapse after the posting and before the day of hearing. Counsel for the defendants have misread the language of the statute in their argument wherein they urge that twenty days must elapse "after the day of posting." The statute reads "since the posting." [2] The law takes no notice of fractions of a day. Any fraction of a day is deemed a day unless in a particular case it is necessary to ascertain the relative order of occurrences on the same day. It was early recognized as settled that "where the reckoning is to be made from an 'act done [here the posting of the notice on September 25th] the day upon which it was done must, of necessity, be counted as one day, because if that day be excluded, then the count, instead of being from the act itself, is really from the day following the doing of the act, which would be a subsequent point of time' " (*Price* v. *Whitman,* 8 Cal. 412, 416; *Iron Mountain Co.* v. *Haight,* 39 Cal. 540). This is true especially when, as here, there is no indication that the day on which the act was done was intended to be excluded (*Derby* v. *City of Modesto,* 104 Cal. 515, 522 [38 Pac. 900]; 24 Cal. Jur. 577 et seq.). It may also be noted that the first publication of said notice was on the fifteenth day of September, 1923, a full month prior to the date set for the hearing of the objections. In any event the notice was sufficient.

[3] In their first affirmative defense the defendants alleged, and the court found, that on the eleventh day of September, 1923, which was the date of the passage of the ordinance of intention, there was an outstanding indebtedness against the land in this identical district of $18,631.90 and that this indebtedness represented the balance unpaid and not yet due of a total indebtedness of $37,263.81 incurred for public work performed in a prior proceeding taken under said Road District Improvement Act of 1907 pursuant to a resolution of intention adopted October 16, 1917. It is the contention of the defendants that the board of supervisors was without authority to commence another proceeding under said act when there was a pre-existing indebtedness on the land in the same district created under said act. The contention is based on the language of section 22 of the act of 1907 as amended in 1915. In that section the form of the bonds to be issued to represent the cost of the improvement is prescribed. Included in the required form is the statement that "This bond . . . is one of a series of bonds of like date and effect . . . issued in behalf of road improvement district number —— of said county, which constitute the only indebtedness of said district." It is argued that by including the statement that the said bonds "constitute the only indebtedness of said district" the legislature has in effect prohibited proceedings under the act and the issuance of further bonds thereunder unless it be true that said bonds "constitute the only indebtedness of the district." We are persuaded that there is much of substance in this contention. The form prescribed by section 12 of the act as originally adopted contained no such requirement. In 1915 the section was amended (Stats. 1915, p. 1397) so as to require that the board of supervisors include in the form of the bond a representation that said bonds "constitute the only indebtedness of the district." This section was again amended in 1919 (Stats. 1919, p. 516) and the same requirement was repeated. The statute was revised in 1921 (Stats. 1921, p. 311) and the identical language again employed. In this revision, however, the requirement as to the form of the bond is incorporated in section 22 (Stats. 1921, p. 326). We are not at liberty to disregard the requirement of the statute. Its obvious purpose was to assure property

owners in the district that improvement bonds of this sort would not be pyramided upon the district by similar, successive, and contemporaneous proceedings and was further to assure the contractor and all purchasers and holders of said bonds that said bonds when issued would constitute the only indebtedness of the district. This purpose may reasonably be deemed to result in making the bonds a more marketable and stable security as well as having an influence on the bids for the work favorable to the property owners. If bonds be issued to represent the cost of the improvement in the present proceeding and the bonds issued to pay for a former improvement be outstanding, unpaid and not yet due, as in this case, the statement to be incorporated in the bonds about to be issued and required by the statute, to wit, that there is no other indebtedness of the district, would be false. The statute requires the board of supervisors to make that representation in the body of the bond, and under the law the chairman of the board of supervisors must sign the bonds. Every consideration in law and equity demands that when the required representation be made it be the truth of the matter. We are not now dealing with the effect of the language in section 20 of the act that ''no bonds and assessment or tax thereafter [after the acceptance of the work] levied for the payment of the bonds to be issued for said work and expenses shall be held invalid by any court for any error, informality, omission, or other defect in the proceedings where the resolution of intention has been actually published as in this act provided, before the said board shall have ordered the said work to be done.'' (Stats. 1921, p. 325.) We are dealing with a situation where no work has been done and where it appears that the chairman of the board of supervisors has refused to sign the contract when it is made known to him that bonds must thereafter be signed by him to represent the cost of the work and that such bonds when so signed would contain a statement which to his knowledge would be false. In such case the so-called curative clause has no application and the proceedings may be halted until such time as the statutory requirement has been complied with. If it be suggested that the proceedings should not be declared void *in toto* but only an abatement ordered until such time as the present outstanding indebtedness

of the improvement district be paid off it is at once observable that such a construction of the statutory provision might result in grave injustice either to the contractor or to the property owners. If the contractor has made his bid and the contract has been awarded to him and several years be required to elapse before he can proceed with the performance of his work the cost of material and labor on which his bid was based may in the meantime have materially increased. On the other hand, if such cost units have materially decreased the result would be that the property owners would be required to pay more for the work than would be just and proper at the time the work was done. Our conclusion is that it was the intention of the legislature that improvement proceedings under the act of 1907 should not be instituted until all indebtedness outstanding against the district and incurred by reason of prior proceedings under said act has been fully paid. It was thus the duty of the board of supervisors under the law to refrain from piling one indebtedness of the district upon another of the same district and the chairman of the board was justified in refusing to sign said contract. The plaintiff seeks to meet the present objection by urging that the installments of principal and interest on the bonds to be issued for the contemplated improvement and falling due before the retirement of the old bond issue may for aught that now appears be paid out of funds raised otherwise than by a special assessment tax on the lands in the district. But it does otherwise appear. Section 6 of the notice of award, attached as an exhibit to plaintiff's complaint, provides that a special fund for the payment of said bonds is to be raised by the levy of special assessment taxes upon all the lands in the district. It is further contended that if said bonds be issued they will, under the holdings in *Woodill & Hulse Electric Co.* v. *Young,* 180 Cal. 667 [5 A. L. R. 1296, 182 Pac. 422], and *Barber Asphalt Co.* v. *Armstrong,* 48 Cal. App. 70 [191 Pac. 954], be a superior lien and be in effect the only indebtedness of the district. The cases just referred to did not involve proceedings under the Road Improvement Act of 1907, but were concerned with proceedings under other street improvement acts where no such restriction is found. The plaintiff further relies on *San Francisco Paving Co.* v. *Egan,* 146 Cal. 635 [80 Pac. 1076],

and *Flickinger* v. *Fay*, 119 Cal. 590 [51 Pac. 855]. Those cases likewise are not in point for the reason that the proceedings involved therein were taken under street improvement acts which contained no restrictions such as found in the act of 1907.

[4] The defendants challenge the constitutionality of the act of 1907 under the state and federal constitutions. Section 26 of the act provides that the tax to be levied to satisfy the bond obligation ''shall be levied and collected in the same mode and manner and by the same officers as the ordinary county taxes, and all laws applicable to the levy, collection and enforcement of such county taxes are hereby made applicable to said special taxes.'' By reason of this provision it is contended that the property owner may not know of the amount of the special assessment tax to be paid by him until the final installment on said bonds is to be paid (1) because of the fluctuations in assessed values from year to year and (2) because the tax on some of the lots in the district may become delinquent and some of the land owners be required to pay an undue proportion in order to make up a sufficient fund to pay said installments. It is accordingly urged that the land of one property owner in the district may thus be impressed with a tax not properly chargeable to it but chargeable against the land of the delinquent owner. We deem it not essential to the validity of the statute that the property owner be advised in advance of the precise amount he will be required to pay each year as the special assessment tax is levied to satisfy the installments of principal and interest on the bonds as they become due. The law requires the board of supervisors to levy and collect sufficient funds for that purpose. This requirement is mandatory. When the contract is let the property owner does know the amount of the cost of the work which will be represented by the principal of bonds to be issued. The defendants herein were so advised, it is assumed, for they are objecting to the contract price. The nature of the proceedings is such that precision as to the exact amount of future levies as against each lot is impossible by reason of fluctuations in assessed valuations from year to year and delinquencies in payment of the tax on the part of some land owners in the district. These facts are not alleged in the

answer but they may be assumed. It would not follow
therefrom that the method of *ad valorem* assessment would
be invalid. If the value of a particular lot increase it is
reasonable to assume that the benefit and burden would
increase proportionately. If the value decrease a lessen-
ing of the assessment would result. If some of the special
assessment payments become delinquent from year to year
it would not follow that the lands of the delinquent owners
would be relieved from paying the charge. It would be
merely postponed. With the penalties and costs accruing
to the bond fund it is reasonable to assume that the burden
is equalized during the period that the bonds are outstand-
ing.

The act of 1907 has received consideration in numerous
cases in this state. Its validity on numerous grounds of
attack has been declared. (*Thomas* v. *Pridham,* 171 Cal.
98 [153 Pac. 933]; *Barber Asphalt Co.* v. *Bancroft,* 167
Cal. 185 [138 Pac. 742]; *Dillingham* v. *Welch,* 179 Cal.
656 [178 Pac. 512]; *Pierce* v. *County of Solano,* 62 Cal.
App. 465 [217 Pac. 545]; *Swall* v. *County of Los Angeles,*
42 Cal. App. 758 [184 Pac. 406]; *Hunt* v. *Manning,* 24
Cal. App. 44 [140 Pac. 39]; *McCray* v. *Manning,* 22 Cal.
App. 25 [133 Pac. 17].) The *ad valorem* method of assess-
ment has been upheld (*Los Angeles County Flood Control
Dist.* v. *Hamilton,* 177 Cal. 119 [169 Pac. 1028]; *Thomas*
v. *Pridham, supra; Swall* v. *County of Los Angeles, supra*).
The method providing for the apportionment of the assess-
ment on the lots in the district has been held to be a proper
subject matter of legislative discretion (*Emery* v. *San
Francisco Gas Co.,* 28 Cal. 345; *Henrick* v. *Crowley,* 31 Cal.
471, 474; *Mahoney* v. *Braverman,* 54 Cal. 565, 568; *Clute*
v. *Turner,* 157 Cal. 73, 81 [106 Pac. 240]; *Thomas* v. *Prid-
ham, supra; Swall* v. *County of Los Angeles, supra*). The
defendants rely largely on *Norwood* v. *Baker,* 172 U. S. 269
[43 L. Ed. 443, 19 Sup. Ct. Rep. 187], and *Spring Street
Co.* v. *City of Los Angeles,* 170 Cal. 24 [L. R. A. 1918E,
197, 148 Pac. 217]. The effect of these decisions has been
discussed and their application limited in *Thomas* v. *Prid-
ham, supra.* (See, also, *Duncan* v. *Ramish,* 142 Cal. 686,
691 [76 Pac. 661].) We find nothing in those cases which
brings the present case within the doctrine they declare.

The defendants do not allege that no benefits will accrue to their lands. The court found that benefits would accrue, and expressions of the supreme court of the United States following the Norwood case, especially those found in the case of *Kansas City Ry.* v. *Road District,* 266 U. S. 379 [69 L. Ed. 335, 45 Sup. Ct. Rep. 136], are to the effect that it is only when the legislative determination as to benefits is palpably arbitrary and therefore a plain abuse of power can it be said that it offends the due process clause of the fourteenth amendment. (See *Lent* v. *Tillson,* 72 Cal. 404 [14 Pac. 71].)

Finally, it is contended by the defendants that the evidence shows that the cost of the proposed work is grossly excessive when compared with the value of the lots in the district. The engineer of the proposed work testified that the original cost of the work would be in the proportion of $566.92 for each fifty-foot lot in the district and the total amount to be represented by the principal and interest on the bonds to be issued to represent the cost of the work would total $226,295.37. The average assessed value of the lots in the district is $150. The fair average market value of the lots in the district appears to be from $500 to $600. There are 384 fifty-foot lots in the district. It thus appears that the contract price is approximately equivalent to the market value of the lots in the district. As stated by the judge at the conclusion of the trial the case presents a most unfortunate situation. There was evidence that the type of pavement provided for in the specifications is too costly for a district embracing property of such valuation. It may be that by reason of the improvement the values will be more than doubled in consequence of the pavement. Such may not be the case. These are not matters for our determination on this record. No fraud is alleged or proved. It is claimed that the bids were advertised for and the contract was awarded at a time when prices were at their peak. In a new proceeding, if one be commenced, either less costly pavement may be specified or more advantageous prices may be received. These are questions to be determined by the board of supervisors in the exercise of their sound discretion. For the reason only that said board was not authorized to institute and carry to completion the proceedings in

question in the face of said prior and outstanding indebtedness of the district the judgment is reversed.

Waste, C. J., Curtis, J., Preston, J., Langdon, J., and Seawell, J., concurred.

Rehearing denied.